Original
No. 7951

## FRANCIS P. EDES' CASE

November 30, 1978

*Charles J. Dunn*, bar counsel, by brief and orally, and *Robert A. Raulerson*, chairman, orally, for the committee on professional conduct.

*Maynard, Perkins & Phillips P.A.*, of Concord (*Mr. William Maynard* orally), for Francis P. Edes.

DOUGLAS, J.    The petition of the committee on professional conduct for the suspension of Francis P. Edes from the practice of law in this State was filed in this court on November 21, 1977, and amended on March 15, 1978. After a hearing on the merits, the Master (*George S. Pappagianis*, Esq.), filed a report dated July 18, 1978, which recommended the suspension of Edes from the practice of law in New Hampshire for one year. We approve the recommendations of the master.

Edes represented Nelson and Melvin Moody in a sale of real estate. The master found that Edes accepted money on the Moodys' behalf for escrow and trust purposes and that he improperly commingled those funds. In addition, the master found that Edes loaned Nelson Moody's money to third persons without Mr. Moody's authorization; that he converted Nelson Moody's money to his own use without authorization; failed to account for the money despite repeated requests by Mr. Moody; and, that he improperly prepared income tax returns for Nelson Moody from 1972 through 1976. The master concluded that this conduct violated Disciplinary Rules 9-102(A) and (B)(3) and (4) of the Code of Professional Responsibility. DR 9-102 requires that clients' funds be maintained separately from lawyers' funds. DR 9-102(B)(3) and (4) specifically requires a lawyer to maintain records of clients' funds and to deliver the funds to the client if the client is entitled to them. According to the master, Edes violated DR 6-101(A)(2) and (3) by handling Mr. Moody's legal matters without adequate preparation and neglecting those legal matters entrusted to him. The master found that also violated was Supreme Court Rule 26, section 7, which requires that attorneys maintain complete financial records and forbids the commingling of client funds with lawyer funds. *In re Proposed Rules Relating to Grievance Procedures*, 115 N.H. 310, 318, 341 A.2d 272, 277 (1975).

Edes represented Mrs. Elizabeth Bronsdon in a personal injury claim and the settling of that claim. The master found that he also represented Mr. Bronsdon, Mrs. Bronsdon's ex-husband; that he settled the case without Mr. Bronsdon's authority; and that he failed to arrange for Mr. Bronsdon to receive his share of the settlement. During the course of the settlement, a release and draft were sent by the opposing party to Edes for the signatures of Mr. and Mrs. Bronsdon. Although both parties' signatures appeared on the release and draft, it was discovered that Mr. Bronsdon's signatures were forgeries. The master found that Edes knew that Mr. Bronsdon did not sign the release and draft and that his signatures were forgeries. The master concluded that Edes violated DR 1-102(A)(1), (4), and (6) by engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, engaging in conduct adversely reflecting on his fitness to practice law, and violating a disciplinary rule.

■■■ The standard applied to professional misconduct cases is the Code of Professional Responsibility adopted by the New Hampshire Bar Association, effective Feburary 1970. Use of the Code by the bar was officially ratified by the court effective May 2, 1977. In

bar disciplinary cases, the committee on professional conduct must prove the attorney's misconduct by clear and convincing evidence. *Decato's Case*, 117 N.H. 885, 886, 379 A.2d 825, 826 (1977); *Mussman's Case*, 111 N.H. 402, 404, 286 A.2d 614, 615 (1971). Our function in this case is to determine "whether a reasonable man could have reached the same decision as the master on the basis of the evidence before him." *Sargent Lake Association v. Dane*, 118 N.H. 720, 722, 393 A.2d 559, 561 (1978).

The master's report in this case contains numerous references to the record. Reviewed in its entirety, the record discloses sufficient evidence to support the master's findings. Edes does not really contest that his conduct regarding Nelson Moody's legal matters violated the Code and the supreme court's rules; rather, he argues that he did not intend to gain financially from his use of Mr. Moody's funds. The master agreed with this contention, and correctly stated that Edes' lack of intention to profit and his making of partial restitution are to be considered on the question of the extent of the discipline to be imposed. *Wholey's Case*, 110 N.H. 449, 450, 270 A.2d 609, 610 (1970); *Donovan's Case*, 108 N.H. 34, 39–40, 226 A.2d 779, 783 (1967).

Edes argues that the evidence does not support the master's finding that he was aware of forgeries on the Bronsdon release and draft. It is undisputed that Mrs. Bronsdon came to Attorney Edes' office from Haverhill, Massachusetts on September 13, 1977, the date of execution of the release and draft. Several witnesses gave conflicting testimony as to the time Mrs. Bronsdon arrived at the office, when and where the signatures were placed on the document, and whether Mrs. Bronsdon left the law office and later returned with signatures. The master found and ruled that Mrs. Bronsdon arrived late in the afternoon; that she did not leave and then return; and that all signatures were placed on the release and draft while she was at the law firm. He concluded that Edes knew that the signatures were forgeries. "Credibility as well as weight given to testimony is a question of fact for the court and if the findings could reasonably be made on all evidence they must stand." *Gordon v. Gordon*, 117 N.H. 862, 865, 379 A.2d 810, 813 (1977). We hold that the evidence of Edes' knowledge was clear and convincing. Therefore we concur with the findings of the master.

This case unfortunately highlights the "deplorable fact that a large number of disciplinary proceedings against lawyers involve misconduct in connection with the funds of a client." R. Wise, Legal Ethics

165 (2d ed. 1970). The Bar should consider possible implementation of spot audits of attorneys' financial records and trust accounts. Audits could provide an effective enforcement mechanism to carry out the provisions of Supreme Court Rule 26, section 7, which provides that

> Every attorney shall maintain complete records of the handling, maintenance and disposition of all funds, securities and other properties of a client at any time in his possession from the time of receipt to the time of final distribution and shall preserve such records for a period of six years after final distribution of such funds, securities or other properties or any portion thereof. Funds of a client and funds in which a client has an interest shall be deposited in a trust account and shall in no way be commingled with the funds of an attorney or the funds of the firm of the attorney. The court may at any time order an audit of such financial records or trust accounts of an attorney and take such other action as it deems necessary to protect the public.

*In re Proposed Rules Relating to Grievance Procedures*, 115 N.H. 310, 318, 341 A.2d 272, 277 (1975).

Attorney Edes' lack of competence in handling his clients' financial matters, particularly in the area of taxation, emphasizes the need for a comprehensive bar referral service. Attorneys who are not competent in certain areas of law, such as taxation or copyright, should be able to associate with or refer their clients to other attorneys who are experienced in those areas to provide more protection for the public.

■ The seriousness of Edes' violation of the Code mandates our adoption of the master's recommendation that he be suspended from the practice of law in New Hampshire for one year. His conduct not only indicated a lack of competence in his representation of clients, but included misuse of client funds and dishonesty in his dealings with clients and opposing parties. Edes voluntarily suspended himself from the practice of law pending the outcome of this case on August 7, 1978; and his suspension will remain in effect until further order of this court. Provided he has made restitution of all funds to the satisfaction of the committee on professional conduct, he may petition for reinstatement on June 7, 1979, to be effective on or after August 8, 1979. The matter will be heard by this court, if necessary, at our July session. Edes shall reimburse the committee for actual

out-of-pocket expenses in an amount to be determined by this court. *See* Supreme Court Rule 26, section 17.

*So ordered.*

All concurred.