Original
Nos. LD-87-001
    LD-87-005
    LD-87-009

### FITZPATRICK'S CASE

September 13, 1989

*Wiggin & Nourie,* of Manchester (*Richard B. McNamara* on the brief and orally), for the Committee on Professional Conduct.

*Sulloway Hollis & Soden*, of Concord, and *Russell McGuirk*, of Newmarket (*Warren C. Nighswander* and *Mr. McGuirk* on the brief, and *Mr. Nighswander* orally), for the respondent.

THAYER, J. The Supreme Court Committee on Professional Conduct brings two petitions for suspension and one petition for disbarment of the respondent, James J. Fitzpatrick, from the practice of law. *See* SUP. CT. R. 37(13). The respondent has been a member of the New Hampshire Bar since 1970 and is currently a sole practitioner in Portsmouth. The three petitions brought against the respondent charge professional misconduct arising from his representation of clients, Francis and Louise Gray and Mrs. Joanne L. Allessio, in matters unrelated to one another. The two petitions for suspension focus on the respondent's representation of these clients. The petition for disbarment is based on allegations that the respondent lied to or attempted to mislead the Committee on Professional Conduct (the committee) during its investigation of the respondent's alleged misconduct in the Gray matter.

A hearing was held on all three petitions before a Referee (*Joseph M. McDonough, III*, Esq.) on March 25, 1988. The referee made written findings of fact and rulings of law, which were transmitted to this court. The respondent objected to the findings and rulings, and we ordered the parties to brief and argue the issues raised.

The referee made the following findings of fact. In the Spring of 1984, Mr. & Mrs. Gray engaged the respondent to represent them in a boundary dispute. In the summer of 1984, the respondent told the Grays that he had brought suit, and in November of 1985, he told them that a decree had been issued in her favor and that a surveyor had to determine the boundary line of their property. He later told the Grays that he would be able to resolve the matter because they were entitled to a default judgment. He mailed them copies of a motion for a judgment and proposed decree. The referee found that the respondent gave the impression that suit had been brought, and that a decree either had been or would be entered, when in fact, no action had ever been filed by the respondent on behalf of the Grays.

Accordingly, the referee found that the respondent violated disciplinary rule DR 1-102(a)(4) of the Code of Professional Responsibility by deliberately misleading his clients as to the status of their case. He further found that the respondent violated DR 1-102(a)(6) by engaging in conduct which adversely reflects upon his fitness to practice law, and DR 6-101(a)(3) by neglecting a legal

matter entrusted to him. All of these violations were found by clear and convincing evidence.

With regard to the Allessio matter, the referee found that the respondent led Mrs. Allessio to believe he was representing her interest in an action concerning real estate. It was found that the respondent told Mrs. Allessio that he had brought suit and received a default judgment, and that he needed an appraiser to arrive at an amount so judgment could be entered. He further told her that the court had entered a decree for $38,000 in her favor and that the court was assessing a $250 penalty for each day of non-compliance. In addition, he told her that a courier with a check for the judgment had been sent from Boston, but was involved in an accident so that he was unable to deliver it. The respondent, during various calls and conversations, continued to tell Mrs. Allessio that a decision was reached in her favor but that payment had been delayed for a number of reasons.

On February 17, 1987, the respondent brought Mrs. Allessio a check for $650, telling her it was an advance on costs which had been assessed. Mrs. Allessio became suspicious, promptly contacted the Rockingham County Superior Court, and learned that no suit had been filed. On February 19, 1987, Mrs. Allessio met the respondent in the courthouse lobby, and he told her that he was going to speak with the clerk of court. When he returned to the lobby, he told Mrs. Allessio that everything was taken care of and that papers had been filed. Subsequently, upon speaking with the clerk, Mrs. Allessio learned that no papers had been filed, but that the respondent had merely asked the clerk what he needed to do to get the case before the court. No suit was filed until March 5, 1987.

Based upon these findings of fact, the referee found by clear and convincing evidence that the respondent violated DR 1-102(a)(4) and Rule 8.4(c) of the Rules of Professional Conduct, by engaging in a lengthy and systematic effort to mislead his client regarding the status of the action for which he had been retained. (The Code of Professional Responsibility was replaced by the New Hampshire Rules of Professional Conduct on February 7, 1986.) He further found that the respondent violated DR 1-102(a)(6) by engaging in other conduct that adversely reflects on his fitness to practice law. Finally, the referee found that the respondent violated DR 6-101(a)(3) and Rules of Professional Conduct 1.3(a) and (b) by neglecting a legal matter entrusted to him and by failing to diligently handle the matter for which he had been retained.

The third petition brought against the respondent includes allegations that the respondent misled the Committee on Professional Conduct in the course of its investigation of the Gray matter. On that petition, the referee found that the respondent lied under oath to a committee hearing panel on February 18, 1987, when he testified that a writ dated October 15, 1985, prepared on behalf of Louise Gray, had been served on the defendants and entered in Strafford County Superior Court. It was further found that he lied to a hearing panel on July 13, 1987, when he again testified that the writ had been served and filed with the superior court. Additionally, the referee found that the respondent created correspondence relating to a decree and proposed judgment after the fact, in an attempt to mislead the committee. Lastly, the referee found that the respondent lied during a deposition conducted by counsel for the committee on January 22, 1988, when he testified that he had been subject to a reprimand proceeding in Maine which concluded in 1984 or 1985. The respondent thereby attempted to lead the committee to believe that those proceedings had concluded, when in fact, they were continuing and the respondent had attended a hearing on the matter on January 21, 1988, the day before he testified.

Before this court, the respondent argues that there is no evidence in the record to support the referee's findings on the charge of misleading the committee and that the allegations against the respondent in the Gray and Allessio matters do not support the imposition of discipline any greater than a six-month suspension to be followed by a period of supervised probation.

As we have stated previously, it is our function in reviewing the referee's findings in a bar disciplinary case to determine "'whether a reasonable [person] could have reached the same decision as the [referee] on the basis of the evidence before him.'" *Woiccak's Case*, 131 N.H. 735, 741, 561 A.2d 1049, 1052 (1989) (quoting *Edes' Case*, 118 N.H. 815, 817, 395 A.2d 498, 499 (1978), itself quoting *Sargent Lake Association v. Dane*, 118 N.H. 720, 722, 393 A.2d 559, 561 (1978)). Furthermore, any "conflicts as might be found in the testimony, questions about the credibility of witnesses, and the weight to be given to testimony are for the master to resolve." *Ballou v. Ballou*, 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978). We hold that the record contains sufficient evidence for a reasonable person to have found the same facts and reached the same conclusions as the referee did in this case.

The referee found that the respondent lied under oath when he testified that a writ, prepared on behalf of Louise Gray, had been served on the defendants and entered in Strafford County Superior Court. At the hearing before the referee, respondent's counsel stipulated that the respondent had testified before the committee that a writ, dated October 15, 1985, prepared on behalf of Louise Gray, had been served and entered in superior court. Before this court, the respondent argues that he never told the committee that the writ had been served on the defendants. He further argues that the fact that the writ was not served on the defendants prior to his attempt to enter it in superior court explains why the writ was not accepted for filing by the court. See RSA 510:1 (Supp. 1988).

The referee specifically found that no writ had ever been filed in the superior court by the respondent on behalf of the Grays. The clerk of the superior court had no record of receiving the writ. In addition, the respondent did not have the original writ which he claims the superior court returned to him. Lastly, at the hearing before the referee, the respondent maintained that a blank entry in his check register was proof that a check had been sent to the superior court accompanying the writ. There was no notation, however, of a specific dollar figure in the respondent's check register or that the alleged payment was related to the Gray case. Accordingly, based upon these facts and because the referee is best able to assess the credibility of witnesses, see Ballou, 118 N.H. at 465-66, 387 A.2d at 1170, we hold that a reasonable person could have found that the respondent lied to the committee when he testified that the writ had been entered in superior court.

With regard to the referee's finding that the respondent lied to the committee when he testified that the writ had been served on the defendants, we hold that there is sufficient evidence in the record to support this finding. Before this court, the respondent argues that he never testified that he had the writ served on the defendants; rather, he asserts that he believed or assumed the writ had been served until he discovered otherwise in January or February of 1986. He directs us to his testimony before the referee, where he stated that the writ was never sent to the sheriff's office for service. He asserts that it is not plausible for him to stipulate that he testified in 1987 that the writ had been served, when he knew in January or February of 1986 that it had not been served. The fact remains, however, that the respondent's counsel stipulated, in respondent's presence, that the respondent had previously testified to the committee that the writ had been served on the defendants. The referee was in the best position to weigh the

respondent's credibility, and chose not to believe his testimony. Given counsel's stipulation and the fact that the writ was never served, there clearly exists a basis for a rational trier of fact to find that the respondent testified that the writ had been served, which was a lie.

In addition to the misrepresentation described above, the referee also found that the respondent created correspondence relating to a decree and proposed judgment, after the fact, in an attempt to mislead the committee. Upon a review of the record, we hold that there is sufficient evidence to support this finding. At the hearing before the referee, the respondent testified that on January 3, 1986, he sent to the superior court a motion for default on behalf of the Grays, which was subsequently returned. The only piece of correspondence with the court that the respondent was able to produce, however, was a cover letter dated January 3, 1986, addressed to the clerk of the superior court, which purportedly accompanied the motion for default. He was unable to also produce the motion, which was also allegedly returned. Furthermore, the evidence was that no writ had ever been filed with the court, nor was there any evidence that the court received the motion. Based upon this evidence and the fact that the referee is in the best position to assess the credibility of witnesses, we hold that a reasonable person could find that the cover letter dated January 3, 1986, was created after the fact in an attempt to mislead the committee.

Lastly, the referee found that the respondent lied under oath when he testified during a deposition, on January 22, 1988, that he had been subject to a reprimand proceeding in Maine which concluded in 1984 or 1985, when in fact, those proceedings were continuing. At the hearing before the referee, the respondent maintained that nothing was pending against him when he was deposed on January 22, 1988. Before this court, the respondent asserts that he was not asked whether the proceeding had been reopened, and that the disciplinary hearing held on January 21, 1988, was only a preliminary hearing to determine whether further action should be taken.

Based upon a review of the record concerning the deposition, it appears that the respondent was asked about *any* disciplinary complaints in other States, and that his answer gave the impression that disciplinary proceedings in Maine had ended in 1984 or 1985. The record indicates, however, that a disciplinary complaint did exist, because the respondent appeared before the Maine Board of Overseers of the Bar on January 21, 1988. Although this may have been a preliminary hearing to determine whether further action

should be taken on the matter, it was clearly a response to a pending disciplinary complaint of which the respondent had knowledge. Accordingly, there were sufficient facts in the record for the referee to find that the respondent lied or attempted to mislead the committee when he said that reprimand proceedings had concluded in 1984 or 1985, and when he failed to mention the preliminary hearing which had taken place the day before.

■ It is the obligation of this court to impose disciplinary sanctions "for the protection of the public, the maintenance of public confidence in the bar as a whole, and the prevention of the recurrence of similar conduct." *Mussman's Case*, 111 N.H. 402, 412, 286 A.2d 614, 620 (1971). For these reasons, we may suspend or disbar an attorney "as necessary to protect the public and the integrity of the legal profession." *Eshleman's Case*, 126 N.H. 1, 3-4, 489 A.2d 571, 572 (1985); *see* RSA 311:8.

■ The findings of fact made by the referee clearly demonstrate that the respondent engaged in professional misconduct when he lied to or attempted to mislead the committee, thereby violating the Rules of Professional Conduct, N.H. R. PROF. CONDUCT 8.4(a) and (c), and "engage[d] in conduct involving dishonesty, fraud, deceit or misrepresentation," N.H. R. PROF. CONDUCT 8.4(c). Lying to or attempting to mislead the committee in an effort to cover up misrepresentations to his clients and neglect of their legal matters evidences serious disregard for the institutions the respondent as an attorney has sworn to protect and uphold, and disbarment is the only sanction that will truly protect the public and maintain public confidence in the bar under these circumstances. *See Mussman's Case*, 111 N.H. at 412, 286 A.2d at 620. Because we accept the referee's findings that the respondent lied under oath and attempted to mislead the committee on numerous occasions, we hold that the respondent should be disbarred, a sanction that would be justified on proof of any one of the lies. While we recognize that disbarment is a severe discipline to impose, we must emphasize the seriousness of the respondent's violation of the Rules of Professional Conduct. Because we hold that the respondent engaged in professional misconduct under Rules 8.4(a) and (c), we need not determine whether the respondent's actions constitute a criminal act in violation of Rule 8.4(b), as alleged in the petition for disbarment. In addition, we note that there are sufficient facts in the record for the referee to have made the findings he did with respect to the Gray and Allessio matters. The respondent's neglect of his clients' legal matters and his continuing misrepresentations to those clients are reprehensible in themselves. However, his compounding of that unethical conduct by continuing to lie before

the committee demonstrates a disregard for honesty and integrity, which are necessary qualities for those engaged in the practice of law.

The respondent asserts that certain mitigating factors should be considered by this court in determining the appropriate disciplinary action. *See Broderick's Case,* 104 N.H. 175, 178, 181 A.2d 647, 650 (1962). He argues that his reputation in the legal community, the fact that he received no financial benefit from the Grays or Allessios, that he fully cooperated with the Professional Conduct Committee, and that he has reformed his practice habits are all factors which should be considered favorably by this court. We first note that lying to or attempting to mislead the Professional Conduct Committee is in no way considered to be full cooperation with that committee. Furthermore, mitigating factors "do not necessarily preclude disbarment for the protection of the public." *Eshleman's Case,* 126 N.H. at 6, 489 A.2d at 574. We do not believe that the mitigating factors raised by the respondent are any excuse for lying or being dishonest in the course of an investigation by the Professional Conduct Committee.

James J. Fitzpatrick is hereby disbarred.

*So ordered.*

All concurred.