Original
No. LD-88-003
No. LD-88-004

## Bourdon's Case

November 16, 1989

*Martha V. Gordon*, of Manchester, Bar Counsel, by brief and orally, for the Committee on Professional Conduct.

*Douglas R. Bourdon*, of Nashua, by brief and orally, *pro se*.

JOHNSON, J. The Supreme Court Committee on Professional Conduct brings two petitions for suspension of the respondent, Douglas R. Bourdon, from the practice of law. *See* SUP. CT. R. 37(13). The respondent has been a member of the New Hampshire

Bar since 1982 and is currently a sole practitioner in Nashua. The two petitions charge professional misconduct arising from respondent's representation of two clients, one being Darlene D. and the other Louis Kluntz, and ask for two consecutive six-month suspensions. The matters are unrelated to one another.

A hearing on the petition relating to respondent's representation of Darlene D. was held on November 17 and 18, and December 8, 1988, before a Referee (*Bean*, J.). A hearing on the petition relating to respondent's representation of Louis Kluntz was held on August 16 and August 26, 1988, before the same referee. The referee made written findings of fact and rulings of law at the conclusion of each hearing, and these findings and rulings were transmitted to this court. Respondent objected to the findings and rulings, and we ordered the parties to brief and argue the issues raised. For the reasons discussed below, we order respondent disbarred.

The referee made the following findings of fact with regard to respondent's representation of Darlene D. Respondent was retained by Darlene D. to represent her in a divorce action. She told him at their first meeting that she had filed a domestic violence petition against her husband, Walter D., in the Henniker District Court. However, before contacting respondent, Darlene had withdrawn the petition after she and her husband had filed a signed stipulation. She gave respondent her file on this petition at their initial meeting, and he was therefore fully aware of its status when he undertook his representation of Darlene.

Respondent then drafted, and Darlene signed, a libel for divorce which included a request for *ex parte* relief. The libel alleged that Walter had physically abused Darlene and that she was in fear of her life, well-being, and safety and in fear of the well-being and safety of her minor daughter. During a hearing on the *ex parte* request in May, 1987, Darlene learned that Walter had decided to seek physical custody of their minor daughter.

Later, a problem arose concerning a stipulation signed by Walter and his attorney and forwarded to respondent for Darlene's signature. Darlene signed the stipulation, but respondent changed one of its provisions at her request without informing her of the possible consequences, one of which would be to invalidate the stipulation.

The attorney-client relationship ended in July, 1987, after respondent requested a contested hearing for Darlene's divorce, without her knowledge or approval, at a time she thought the matter had been settled. When Darlene D. discovered what respondent had done, she dismissed him as her attorney.

The referee also found that Darlene and respondent developed an emotional relationship and were sexually intimate during the period when respondent was representing her in her divorce case. At one of their initial meetings, respondent solicited intimate details of her sexual life, including her reaction to sexual contact and the names of men she had sex with while she was married. Later, their social outings included visits to Darlene's parents' home, dinner at various restaurants, trips to the beach, and overnight stays. Respondent also asked Darlene to go with him to Cancun, Mexico. Notes and cards Darlene sent to respondent reveal the nature and extent of the relationship. Respondent knew, or ought to have known, that the custody of the minor children of Darlene might have become an issue in the divorce proceedings and that her conduct, both before and after the separation, might have an influence on the court's decision as to child custody.

Based on his factual findings, the referee found that respondent had violated Professional Conduct Rule 1.7(b), by representing a client when the representation was materially limited by his own interest in developing a relationship with her; Rule 1.8(b), by using information relating to the representation to the disadvantage of his client by soliciting intimate details of her sexual life and manipulating her to his own advantage; and Rule 2.1, by failing to exercise independent professional judgment in the representation of his client. All of these violations were found by clear and convincing evidence.

With regard to respondent's representation of Louis Kluntz, the referee found that Kluntz retained respondent to represent him on a charge of operating while under the influence, second offense. Kluntz had a brief, initial consultation with respondent in early February, 1986. The referee found that "[a]ny discussion of the case in preparation for trial at that first meeting . . . was minimal at best." Kluntz did not meet with respondent again until April, 1986, when Kluntz and his wife, Faith Kluntz, came to respondent's office. Respondent kept them waiting for an hour and a half before telling them that the appointment should not have been made for them, since he had not yet received certain papers from the police department. There was no further discussion of the case with respondent until the day of the trial, June 2, 1986. Respondent met the Kluntzes in the courtroom minutes before the trial began and briefly explained his strategy. The referee found that "there was no real explanation given by the attorney to the client and no discussion of procedure, evidence, possible outcome or appeal rights and procedures."

At the close of the trial, respondent moved to dismiss the case because of an issue regarding the date of the first conviction. The court gave the respondent additional time to file a memorandum of law on the point and indicated he would reserve judgment until the memorandum was filed. The respondent failed to file the memorandum and did not notify the court of his intention not to file such a memorandum.

The district court's July 11, 1986 order in *State v. Kluntz* was mailed to respondent on July 14, 1986. The judge found Louis Kluntz guilty, imposed a $500 fine, committed him to the house of correction for seven days, and revoked his right to operate a motor vehicle for three years. Kluntz was given until July 21, 1986, to file an appeal. On August 1, 1986, the district court sent another letter to respondent stating that since the appeal period had passed, Kluntz would have to pay his $500 fine by October 1, 1986, surrender his driver's license by August 15, 1986, and begin his house of correction sentence on August 25, 1986. The district court sent a third letter to respondent on August 4, 1986, along with a notice of revocation (which required Kluntz's signature), a notice of Impaired Driver Intervention Program, and a time payment card.

Respondent did not forward any of these district court letters and documents to Kluntz when he received them, nor did he in any other way inform him of his conviction and resultant obligations. Kluntz found out about his conviction by reading about it in the July 24, 1986 local newspaper. At that time he tried, without success, to contact respondent. On September 5, 1986, when the department of safety told Kluntz to turn in his license, Kluntz succeeded in reaching respondent, who promised to get back to him. He never did.

Finally, on October 6, 1986, police officers arrested Kluntz at his home on a bench warrant, handcuffed him and took him to the house of correction. After the arrest, Faith Kluntz asked the clerk of the district court for, and later received, copies of all orders and documents concerning her husband's case. On October 14, 1986 (the day Louis Kluntz was released from the house of correction), the Kluntzes also received a package of documents from respondent in an envelope metered-mail dated September 18, 1986, and post-marked October 10, 1986. Although the cover letter (dated September 16, 1986) refers to photocopies, the envelope contained all of the original documents sent to respondent by the district court on July 14, August 1, and August 4, 1986. As the referee found, "Under any set of circumstances these documents were in attorney

respondent's hands shortly after August 4, 1986, and should have been forwarded to his client at that time."

Based on these findings, the referee found that respondent violated Rule 1.1, by failing to fully discuss the case with his client and by failing to follow up after the trial to avoid Kluntz's arrest on a bench warrant; Rule 1.3, by failing to inform his client of the district court order; and Rule 1.4, by failing to inform his client of his conviction, his appeal rights, and his obligations to obey the court orders. All of these violations were found by clear and convincing evidence.

Respondent argues that (1) the testimony of Darlene D. and the Kluntzes is not credible; (2) he competently and diligently represented Darlene D. and Louis Kluntz; (3) the petition filed against him in the Kluntz case was brought "at the urging and assistance by (sic) the Committee"; (4) the Professional Conduct Committee's actions violated his constitutional right to due process; (5) a suspension from the practice of law would violate his constitutional right to equal protection under the law; (6) a decision approving the findings of the referee would have the appearance of unfairness; and (7) the allegations against him do not support any suspension of his right to practice law in New Hampshire.

In reviewing the referee's findings, "our only function is to determine whether a reasonable [person] could have reached the same decision as the [referee] on the basis of the evidence before him." *Sargent Lake Ass'n v. Dane*, 118 N.H. 720, 722, 393 A.2d 559, 561 (1978); *see also Fitzpatrick's Case*, 132 N.H. 211, 214, 566 A.2d 157, 159 (1989). This review standard requires that any "conflicts as might be found in the testimony, questions about the credibility of witnesses, and the weight to be given to testimony are for the [referee] to resolve." *Ballou v. Ballou*, 118 N.H. 463, 465–66, 387 A.2d 1169, 1170 (1978). We hold that there is sufficient evidence in the record to support the referee's findings and conclusions under the "reasonable person" standard articulated in *Sargent Lake Ass'n v. Dane supra*.

With regard to respondent's representation of Darlene D., there is sufficient evidence to support the referee's conclusion that respondent violated Professional Conduct Rules 1.7(b), 1.8(b) and 2.1. Rule 1.8(b) states: "A lawyer shall not use information relating to the representation of a client to the disadvantage of the client unless the client consents after consultation and with knowledge of the consequences." Respondent violated Rule 1.8(b) by using information relating to the representation to his advantage and her disadvantage. He admits he never consulted with her about the

possible consequences of his use of this information. At their first meeting, the thirty-six-year-old attorney learned that Darlene was twenty-four years old and had married Walter when she was nineteen. In addition, she told respondent that she had suffered physical abuse from Walter during the marriage and was seeking a divorce because her husband had left her for another woman. Her overriding concerns were paying her bills and keeping custody of her child. Armed with this knowledge of her vulnerability, he met her again and solicited intimate details about her sexual life. He asked for the names, addresses, and occupations of the men she had had sex with during her separation from her husband, and questioned her about her reaction to the sexual contact. Although he had already drafted a libel for divorce based on irreconcilable differences, he told her he needed this information to determine whether she could file for divorce on the ground of adultery. On their third meeting, they went from the Rockingham County Superior Court to Hampton Beach, where they had dinner and drinks. Respondent then suggested that he spend the night at her house, since his appointment the next morning could be more conveniently kept from her house than his. Respondent could not drive due to a DWI conviction. Darlene agreed, and that night respondent "engaged in intimate physical contact" with her, according to the referee's report.

These facts, which the master found after listening to Darlene's and respondent's testimony, convince us that respondent violated Rule 1.8(b) of the Rules of Professional Conduct. Respondent denies the extent of the questioning concerning Darlene's sexual life, denies attempting sexual contact with Darlene the night he slept at her house, and urges us to disbelieve Darlene's testimony. However, the referee was in the best position to weigh the testimony of Darlene and respondent. *See Fitzpatrick's Case*, 132 N.H. at 215–16, 566 A.2d at 160. We hold that a reasonable person could have found that Darlene's, and not respondent's, testimony was credible.

Respondent violated Professional Conduct Rule 2.1 because he failed to exercise independent professional judgment in his representation of Darlene. The facts proving respondent's violation of Rule 1.8(b) also support his violation of Rule 2.1. Additionally, the evidence shows that respondent requested *ex parte* relief at a time when he knew or should have known that such relief was no longer necessary or desirable. Darlene had recently withdrawn a domestic violence petition against her husband and had entered into

an agreement based on the withdrawal. The referee found that in his attempt to impress Darlene with his aggressiveness, respondent "could well have caused resentment on the part of Walter sufficient to provoke his retaliatory efforts to gain physical custody of the minor child." Respondent's clouded judgment is further revealed in his decision to request a contested divorce hearing without first notifying, consulting with, or obtaining the permission of his client. His emotional and physical entanglement with Darlene adversely influenced his professional decisions. In addition, the respondent failed in his duty to his client by not telling her of the consequences of unilaterally changing the stipulation, as noted above.

Finally, respondent violated Professional Conduct Rule 1.7(b). Where representation of a client "*may* be materially limited . . . by the lawyer's own interests," this rule prohibits representation unless: "(1) the lawyer reasonably believes the representation will not be adversely affected; *and* (2) the client consents after consultation and with knowledge of the consequences." Rule 2.1 (emphasis added). Respondent admitted that he never consulted with Darlene, and the only question we must answer, therefore, is whether a potential conflict of interest existed. Respondent should have warned Darlene that their intimate relationship could prejudice her chances of being awarded custody of her child. After she had become informed of all of the consequences of further representation in view of their developing personal relationship, respondent also should have informed Darlene of her right to consent to or refuse his further representation.

Respondent asserts that the emotional involvement was one-sided and "an unfortunate fantasy on her part." However, the referee, who was in the best position to weigh the credibility of the testimony, believed otherwise. After reviewing the trial record and Darlene's notes, cards, and letters written to respondent, we hold that a reasonable person could have found that respondent was emotionally and physically involved with Darlene D.

With regard to respondent's representation of Louis Kluntz, there is again sufficient evidence to support the referee's conclusion that respondent violated Rules 1.1, 1.3, and 1.4. Rule 1.1 states: "A lawyer shall provide competent representation to a client. Legal competence requires at a minimum . . . proper preparation . . . and attention to details and schedules necessary to assure that the matter undertaken is completed with no avoidable harm to the client's interest." The evidence of respondent's failure to represent Kluntz competently is overwhelming. Not only did respondent fail

to inform his client that he had been convicted and that he had certain appeal rights, respondent also failed to tell Kluntz what he was legally bound to do as a result of the conviction. Thus, Louis Kluntz never knew that the judge had ordered him to pay $500 by October 1, 1986, surrender his driver's license by August 15, 1986, and begin his seven-day house of correction sentence on August 25, 1986. Respondent's failure to represent his client competently caused the summary arrest of Kluntz on a bench warrant in his own home. This harm could have been easily avoided, if respondent had only forwarded to his client the mail he had received from the court.

Respondent wishes us to believe that the Kluntzes lied to the referee and to the Professional Conduct Committee. Credibility was thus an issue before both. Respondent's own time records, prepared for the Professional Conduct Committee, assert that he reviewed and forwarded "court orders and papers" to Louis Kluntz on July 13, 1986. However, the district court did not mail the order to respondent until July 14, 1986. This example of untrustworthy evidence, which is one of many, certainly tended to undermine respondent's credibility. Respondent also alleges that he sent *photocopies* of the original documents to the Kluntzes on September 16, 1986, after Louis Kluntz told respondent he had lost the originals. The envelope the Kluntzes received on October 14, 1986, was metered-mail dated either September 16 or 18, 1986 (the exact date is unclear), contained a cover letter dated September 16, 1986, was postmarked October 10, 1986, and contained all of the *original* documents sent to respondent by the district court. Here too, we hold that a reasonable person could have inferred that it was respondent, and not the Kluntzes, who lied; and we will thus not disturb the referee's decision that respondent violated Rule 1.1.

Respondent also violated Rule 1.3. This rule states: "A lawyer shall act with reasonable promptness and diligence in representing a client. Performance by a lawyer is prompt and diligent when ... it is carried out with no avoidable harm to the client's interest nor to the lawyer-client relationship." The facts stated above supporting the referee's conclusion that respondent violated Rule 1.1 also support his conclusion that respondent violated Rule 1.3.

Finally, respondent violated Rule 1.4. This rule states: "A lawyer shall keep a client reasonably informed regarding the status of a matter and promptly comply with reasonable requests for information. A lawyer shall explain the legal and practical aspects of a matter and alternative courses of action to the extent that such explanation is reasonably necessary to permit the client to make informed decisions regarding the representation. A client is reasonably informed when information relevant to the protection of the client's interest is provided at an appropriate time and in

an appropriate manner." Again, the facts supporting the referee's conclusion that respondent violated Rule 1.1 also support his conclusion that respondent violated Rule 1.4. As the referee found, "Once the trial was over all reasonable communication between attorney and client ceased."

Respondent advances several arguments in his defense, all of which we find meritless. We have already disposed of his first two arguments, that the testimony of Darlene and the Kluntzes is not credible and that he competently and diligently represented them. In his third argument he alleges that the petition filed against him in the Kluntz case was brought "at the urging and assistance by [sic] the Committee." Respondent has presented nothing but a bald allegation of this fact; hence, we are unpersuaded that the Professional Conduct Committee improperly urged and assisted the Kluntzes.

Fourth, respondent argues that the Professional Conduct Committee's actions violated his right to due process under the State and Federal Constitutions. Specifically, he asserts a right to know the names of the Professional Conduct Committee members who voted to file the petitions against him, so that he may learn of any possible conflicts of interest and know the names of his accusers. Respondent knew the names of the members of the Professional Conduct Committee from the outset, but he filed no motion for recusal of any of them from his case at any time prior to the Committee's decision. In view of this, we find no due process violations.

Fifth, respondent argues that a suspension for any length of time from the practice of law would violate his State and Federal constitutional right to equal protection under the law. In support of this argument, he points to an unreported case in which a judge charged with judicial misconduct resigned his judgeship, but was not disciplined as a lawyer, as well as to *Henderson's Case*, 130 N.H. 313, 538 A.2d 1222 (1988). We are not persuaded by this argument, since the doctrine of equal protection does not demand that even all similar misconduct be sanctioned equally, *State v. Lemire*, 115 N.H. 526, 534, 345 A.2d 906, 912 (1975), and we find that the differences in the misconduct in any event render this argument meritless.

Sixth, respondent argues that a decision approving the findings of the referee would have the appearance of unfairness solely because this court appointed the referee. We find respondent's insinuation of possible judicial bias to be baseless.

Finally, respondent argues that even if violations are found, the allegations against him do not support suspension for any length of time from the practice of law in New Hampshire, and that private or public censure would be a more appropriate sanction. On the contrary, we hold that his egregious behavior warrants disbarment.

> "The purpose of lawyer discipline is not to punish the attorney, but to maintain appropriate standards of professional conduct for the protection of the public and the maintenance of public confidence in the bar. By removing from the profession a person whose misconduct has proved him unfit to be entrusted with the duties and responsibilities belonging to the office of an attorney, the public and those charged with the administration of justice are protected."

*State v. Merski*, 121 N.H. 901, 909, 437 A.2d 710, 714 (1981) (citations omitted), *cert. denied*, 455 U.S. 943 (1982). This court has ruled that the misuse of a client's funds ordinarily justifies disbarment. *Carroll's Case*, 127 N.H. 390, 393, 503 A.2d 750, 751 (1985). We hold that respondent's calculated abuse of Darlene D.'s trust and his callous disregard for Louis Kluntz's interests warrant a similar judgment.

This court is obligated to consider mitigating circumstances. *Eshleman's Case*, 126 N.H. 1, 6, 489 A.2d 571, 574 (1985). Regarding respondent's representation of Darlene D., he asserts that he competently prepared and filed all of the papers necessary in a divorce action. Similarly, he points out that, prior to Louis Kluntz's trial, he properly attended to the matters required by his client's case. It is not enough for respondent to demonstrate that in some, but not all, instances his conduct satisfied the requirements of the Rules of Professional Conduct. In our opinion, respondent should be disbarred. At the end of two years, he may petition this court for readmission to the bar of this State, subject to all requirements applicable to applications for admission to the bar, including passing the bar examination. *See* SUP. CT. R. 37(2)(d); RS. AND PROCEDURES OF PROF. COND. COMM. § 13.

Douglas R. Bourdon is hereby disbarred forthwith.

*So ordered.*

All concurred.