Original
No. LD-89-002
No. LD-89-066

## DRUCKER'S CASE

July 9, 1990

*Patricia McKee*, of Exeter, Bar Counsel, by brief and orally, for the Committee on Professional Conduct in No. LD-89-002.

*Allen I. Dublin*, of Meredith, by brief and orally, for the respondent in No. LD-89-002.

*Anthony A. McManus*, of Dover, Bar Counsel, orally, for the Committee on Professional Conduct in No. LD-89-066.

*Leonard M. Drucker*, of Laconia, orally, *pro se*, in No. LD-89-066.

JOHNSON, J. The Supreme Court Committee on Professional Conduct (Committee) filed two unrelated petitions to suspend Leonard M. Drucker from the practice of law in New Hampshire. *See* SUP. CT. R. 37(13)(a). The second petition alleges respondent Drucker's failure to pursue an arbitration matter referred to him by a Connecticut attorney, in violation of the Rules of Professional Conduct, and requests a three-month suspension. Because he admits all the allegations in this petition, we will not discuss the facts, and consider it only with respect to the sanction to be imposed.

The first petition alleges that the respondent violated three Rules of Professional Conduct: Rule 1.7(b), by representing a client when the representation was materially limited by his own sexual interest in the client; Rule 1.8(b), by using information about the client's fragile emotional state and mental disorder to her disadvantage by engaging in sexual relations with her, leading her to suffer emotional turmoil; and Rule 1.14(a), by failing to maintain a normal attorney-client relationship with the client, knowing she was in a fragile emotional state and had a diagnosed mental disability.

After the petition was filed, Robert Upton, II, was appointed by this court as a judicial referee, and a hearing was held before him on August 15–16, 1989. *See* SUP. CT. R. 37(13)(e). In his report, the referee found that the complainant's "testimony concerning her sexual relationship with the Respondent was credible" and that "the Respondent's denial of the sexual relationship was not credible." The referee then set forth the following specific findings of fact.

The complainant, Cheryl M., retained the respondent in August 1987 to represent her in a divorce proceeding. At that time, Cheryl M. was under the care of a psychiatrist and was emotionally fragile. During one of their first meetings, Cheryl M. informed the respondent of her psychiatric treatment. The respondent told Cheryl M. that his marriage was also very stressful, and that he was attracted to her.

Despite the existence of conflicting testimony concerning the events that followed, the referee found as fact Cheryl M.'s allegations that she had sexual relations with Drucker on three occasions. The referee found her version of the events credible because "she remembered with great detail the events" and "[s]he also knew a great deal about the physical condition and habits of the Respondent" that she would not have "learned in a normal conversation with him."

At the initiation of the respondent, the affair between Cheryl M. and Drucker ended shortly after it began. Although short-lived, the sexual contact between the two caused Cheryl M. to become emotionally and physically attracted to Drucker. When he terminated the affair, she felt that it was another rejection in her life, but remained hopeful that his feelings for her would change and that he would be attracted to her once again. Cheryl M. wrote love letters to the respondent, which were not delivered, and she kept a diary that set forth her feelings about him. Several pages of this diary were discovered by her husband, who later confronted Cheryl M. about the affair in the presence of their son.

After the affair ended, Drucker continued to represent Cheryl M. in the divorce proceedings, but the referee found that she "was unable to separate her confidence in him as her lawyer from her unrequited love." The referee concluded that this situation "had a deleterious [e]ffect on [Cheryl M.] and caused her to take actions in her marriage she might otherwise have avoided." In addition, he found "that the Respondent knew or should have known that [Cheryl M.] would suffer emotionally as a consequence of his actions." Based on these findings, the referee found that "[t]he conduct of the Respondent in engaging in a sexual relationship with the Complainant under the circumstances set forth herein," violated Rules 1.7(b), 1.8(b) and 1.14(a) of the Rules of Professional Conduct.

Throughout the proceedings before the Committee and the referee, the respondent denied that he engaged in sexual relations with Cheryl M. He urges us to dismiss the petition against him because (1) the Committee did not prove the allegations against him by clear and convincing evidence, (2) the referee did not specifically rule on the parties' proposed findings of fact and rulings of law, and (3) the referee refused to order production of a medical record.

■■ In reviewing the referee's findings in an attorney discipline case, we must determine whether a reasonable person could reach the same conclusion as the referee based upon the evidence presented at the hearing. *Bourdon's Case,* 132 N.H. 365, 370, 565 A.2d 1052, 1055 (1989); *Fitzpatrick's Case,* 132 N.H. 211, 214, 566 A.2d 157, 159 (1989). If we determine that the record supports the referee's findings and rulings, we then decide on an appropriate sanction to impose against the respondent. *Wehringer's Case,* 130 N.H. 707, 710, 547 A.2d 252, 253 (1988), *cert. denied,* 109 S. Ct. 1103 (1989).

In his first argument, Drucker contends that the Committee failed to prove the alleged violations by clear and convincing evidence. *See*

*Edes' Case*, 118 N.H. 815, 817, 395 A.2d 498, 499 (1978). He bases his contention on the referee's failure to state explicitly that the Committee met its burden of proof by clear and convincing evidence. He also argues that more than a finding relative to the credibility of witnesses is needed to meet the clear and convincing standard, and that certain inconsistencies in Cheryl M.'s testimony raise serious doubts about her veracity. We disagree, and hold that the record, reviewed in light of the totality of the referee's findings, illustrates that the evidence of Drucker's misconduct was clear and convincing. *See id.*

Cheryl M. testified that she first contacted the respondent to represent her in her divorce on August 17, 1987, and four days later she went to his office for an initial consultation. She was very nervous because they discussed her impending divorce, her marriage, her sexual relations with her husband and her emotional problems. She told him she had agoraphobia, which is an anxiety disorder, and that she was seeing Dr. Joseph Sack, a psychiatrist, for treatment of this condition. The evidence also suggests that she mentioned she was being treated with medications.

On August 24, 1987, Cheryl M. returned to the respondent's office to deliver a financial affidavit. She testified that she was, again, very nervous and kept tossing her keys in the air. He sat down next to her, held her hand, and said he was also in a stressful marriage. He then asked her to stand up, embraced her and kissed her. He apologized and said he would refer her to another lawyer. She declined the offer because she did not want to go through the process of telling another lawyer all the personal information she had just told Drucker. Later that day, he called her at home and asked her if she was all right. During the conversation he told her he was very attracted to her. She testified that the thought that he cared for her was especially comforting to her because she was so distraught about her home life.

Cheryl M. then recounted three subsequent visits during which she engaged in sexual activity with the respondent. She could not remember the exact times of the events except that they all occurred between 9:00 a.m. and 2:00 p.m. The first was on August 25, 1987. The second event occurred two days later, on August 27, 1987, the same day Drucker's wife took their daughter to the hospital for treatment of some bruises. The third encounter, which was either before or after August 27, 1987, occurred on a day when a particular client was in the respondent's office reception area.

■ Drucker argues that inconsistencies in Cheryl M.'s story cast doubt on her credibility. Our review of the record reveals that the referee acted reasonably when he determined that all conflicts in the testimony were resolved in favor of Cheryl M., and accordingly we hold that the Committee met its burden of proving the alleged violations by clear and convincing evidence. The referee's failure to state the applicable burden of proof is not error in this case because he found that Cheryl M.'s testimony was "credible" and that Drucker's testimony was "not credible." Therefore, he not only found that it was highly probable that the two parties engaged in sexual activity, *see* McCormick On Evidence § 340, at 959–60 (E. Cleary 3d ed. 1984), but that the sexual encounters did, in fact, take place. This clear finding of fact is more than sufficient to meet the clear and convincing standard. Furthermore, we can presume the referee knew and applied the proper standard of proof because it was set out in the respondent's proposed findings and rulings, which the referee reported he had reviewed. *Cf. State v. Radziewicz*, 122 N.H. 205, 212, 443 A.2d 142, 147 (1982).

■■ We also find that the referee did not err in relying on Cheryl M.'s testimony as support for his conclusion that Drucker violated the professional conduct rules. A referee, as the trier of fact, "may accept or reject in whole or in part any testimony of any witness or party." *Gordon v. Gordon*, 117 N.H. 862, 865, 379 A.2d 810, 813 (1977). It is well settled that "[c]redibility as well as weight given to testimony is a question of fact for the court and if the findings could reasonably be made on all the evidence they must stand." *Id.* at 865–66, 379 A.2d at 813 (citations omitted).

Drucker's second argument concerns the referee's refusal to rule specifically on the parties' proposed findings of fact and rulings of law. He argues that by expressly ignoring both parties' requests, the referee committed reversible error. We find no merit in this argument.

■ A referee appointed by this court to hear a professional conduct matter must file a written report with specific findings of fact and rulings of law. SUP. CT. R. 37(13)(e). In addition, RSA 491:15, which requires superior court judges trying equity and other matters to file, upon request by either party, written decisions stating the facts and the rulings of law, is applicable to professional conduct proceedings. *See* SUP. CT. R. 37(13)(i) ("[p]leadings and procedure . . . before the referee/judge shall conform insofar as practicable with the requirements of the superior court rules for trials of matters of

equity"). These rules, however, do not require that a judge or a referee respond specifically to the parties' proposed findings and rulings. The purpose of the statute is fulfilled if the referee files, in narrative form, the essential facts sufficient to support his decision. *R. J. Berke & Co. v. J. P. Griffin, Inc.*, 116 N.H. 760, 767, 367 A.2d 583, 588 (1976). In the present case, the referee filed a lengthy report in which he set out the facts supporting his decision. In so doing, he complied with the applicable rules of this court and RSA 491:15. *See V & V Corp. v. American Policyholders' Ins. Co.*, 127 N.H. 372, 381, 500 A.2d 695, 702 (1985).

Drucker's final argument concerns a document that was shown to the referee but not produced for the respondent at the hearing. The document, a computer printout, was obtained by Cheryl M. at the hospital where she was employed as a receptionist. It was a two-page document entitled "Patient Biographic Information" and concerned a visit by Drucker's daughter when she was taken to the hospital on August 27, 1987, by his wife. The document stated the date, the child's name, her age and the reason for her visit, and it was obtained by Cheryl M. in order to determine the exact date of one of the days she engaged in sexual activity with the respondent. The document was never presented to the Committee because the respondent produced the actual hospital record at the Committee hearing. After the referee reviewed the printout outside the presence of counsel, he ruled that it was not necessary to produce the document because it was duplicative evidence.

When the respondent received a copy of the transcript and learned the nature of the withheld document, he filed a motion for a new hearing. In that motion, he argued that Cheryl M's new attorney's statement, that Cheryl M. obtained the document because she did not remember the exact date of one of the sexual encounters, directly contradicted her testimony that she "never forgot those dates." He also argued that the retrieval of the document by Cheryl M. called into question the manner in which Cheryl M. became aware of many facets of Drucker's professional and personal life, about which she had testified.

In his order denying the respondent's motion, the referee acknowledged that he did not focus on the issues of credibility raised by Drucker in his motion, when he first examined the document at the hearing. He explained:

> "I do not believe it would serve any interest in reopening the
> hearing for further evidence or conducting a new hearing.

The credibility of the Complainant is directly before me. The Respondent denies any sexual contact whatever with her. . . . I made inquiry of the Complainant about the dates and I believe a fair reading of her testimony was that she had sex with the Respondent on three occasions in August. She knew the first occasion was on August 25. The other two occasions were the days when the Respondent's daughter went to the hospital and [a particular client] came to his office. That is what she never forgot—the precise dates were incidental to the event that triggered her memory."

On appeal, the respondent argues that the referee abused his discretion in denying him access to a document which indicated "that the cloak of medical privacy [of his daughter] had been at least partially breached. . . ." This evidence, he asserts, demonstrated Cheryl M.'s eagerness to find out personal information about Drucker in order to prove her case. We disagree.

■ The referee considered Drucker's credibility argument and determined that it did not change his overall assessment of Cheryl M.'s testimony. Therefore, even if we were to assume that it was improper for the referee to withhold the document, the error was harmless since the use of the document would not have affected the outcome of the case. *See Place v. Place*, 129 N.H. 252, 260, 525 A.2d 704, 709 (1987).

Having addressed the respondent's specific arguments, we next review the referee's report in its totality and determine whether a reasonable person could conclude, as the referee did, that Drucker violated Rules 1.7(b), 1.8(b) and 1.14(a) of the Rules of Professional Conduct. *See Fitzpatrick's Case*, 132 N.H. at 214, 566 A.2d at 159.

■ Rules 1.7(b) and 1.8(b) both concern conflict of interest issues. In *Bourdon's Case*, 132 N.H. 365, 565 A.2d 1052, we held that engaging in a sexual relationship with a client, without warning her of the potential effects on her case, was a violation of Rule 1.7(b). *Id.* at 372, 565 A.2d at 1057. Rules 1.7(b) states, in part, that "[a] lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation and with knowledge of the consequences." Applying this rule to the present case, we note that the respondent not only failed to warn Cheryl M. that having sexual relations could affect the divorce proceedings, es-

pecially the issue of child custody, but when she expressed concern, he blandly reassured her that everything would be fine. We hold, therefore, that based on the evidence before the referee, a reasonable person could have concluded that Drucker violated Rule 1.7(b).

■ We also addressed Rule 1.8(b) in *Bourdon's Case,* and held that the rule would be violated if an attorney used information of a divorce client's vulnerability to pursue a sexual relationship with that client. *Bourdon's Case,* 132 N.H. at 371, 565 A.2d at 1056. Rule 1.8(b) states that "[a] lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client consents after consultation and with knowledge of the consequences." In the present case, initiating divorce proceedings and providing details of her private life to a stranger was very upsetting to Cheryl M. She was visibly nervous and distraught when she first consulted Drucker. Furthermore, he was aware from the outset that she suffered from emotional problems and that she was seeing a psychiatrist. Therefore, it was reasonable for the referee to conclude that the respondent took advantage of Cheryl M's emotional vulnerability by engaging in a sexual relationship with her, and that in doing so he violated Rule 1.8(b).

The referee also found that Drucker violated Rule 1.14(a). This rule states, in part, that "[w]hen a client's ability to make adequately considered decisions in connection with the representation is impaired ... because of ... mental disability ..., the lawyer shall, as far as reasonably possible, maintain a normal client-lawyer relationship with the client."

As we explained above, Cheryl M. informed Drucker at their first meeting that she suffered from agoraphobia and that she was seeing a psychiatrist. By his own admission, the respondent acknowledged that he was aware of the potential seriousness of her condition when he stated that he thought it might affect the custody issue. Despite this knowledge, however, he engaged in a sexual relationship with Cheryl M. and then rebuffed her, all the while continuing to represent her in the divorce proceeding.

■ The record clearly reflects that the respondent failed to maintain a normal client-lawyer relationship with Cheryl M. and, as a result, he caused her and her family mental anguish well beyond that normally associated with a difficult divorce. Thus, the referee reasonably concluded that Drucker violated Rule 1.14(a).

Despite the seriousness of Drucker's misconduct, we find his actions less egregious than the behavior of the respondent in *Bour-*

*don's Case.* The primary reason for this conclusion is that here there was no allegation or finding that Drucker's sexual involvement with Cheryl M. affected his independent professional judgment in his representation of her. *See Bourdon's Case,* 132 N.H. at 371, 565 A.2d at 1056.

■ Based on the violations alleged in the first petition and discussed above, and on those alleged in the second petition and admitted by respondent, we find that Drucker should be suspended from the practice of law for two years and until further order of the court.

Leonard M. Drucker is hereby suspended for two years and until further order of the court.

*So ordered.*

HORTON, J., did not sit; the others concurred.