485 N.W.2d 345 (1992)
In the Matter of DISCIPLINARY ACTION AGAINST Lorene Whitesides LARSON, a Member of the Bar of North Dakota.
DISCIPLINARY BOARD OF the SUPREME COURT OF the STATE OF NORTH DAKOTA, Petitioner,
v.
Lorene Whitesides LARSON, Respondent.
Civ. No. 910344.
Supreme Court of North Dakota.
May 5, 1992.
*346 Vivian E. Berg (argued), Bismarck, for petitioner.
Thomas L. Trenbeath (argued), of Fleming, DuBois & Trenbeath, Cavalier, for respondent.
PER CURIAM.
This is a disciplinary proceeding against Lorene Whitesides Larson, an attorney licensed to practice in North Dakota. For misappropriating client funds and for practicing law while suspended, the Disciplinary Board recommends two seven-month suspensions to run concurrently. We suspend Larson for two years for misappropriating client funds, with a concurrent seven-month suspension for practicing law while suspended.
We explained our standards of review for attorney discipline in a prior discipline of Larson:
We review disciplinary proceedings against attorneys de novo on the record with the standard of proof being by clear and convincing evidence.... In reviewing the record, we accord due weight to the findings, conclusions, and recommendations of the hearing panel.... However, this Court does not act as a mere "rubber stamp" approving the findings and recommendations of the Disciplinary Board after a perfunctory review.... In determining what discipline is warranted, each case must be decided on its own particular facts.
In re Larson, 450 N.W.2d 771, 773-774 (N.D.1990) [Larson I] (citations omitted). These standards apply equally to this disciplinary proceeding against Larson.
The current charges against Larson arose from her mishandling funds of the Chris Reiten estate and from several instances of practicing while under suspension. Larson concedes that her conduct violated the applicable disciplinary standards. However, she asserts that the Board made some erroneous findings of fact; that the Board failed to properly take into account mitigating factors; that the recommended sanctions are too harsh; and that attorney's fees should not be assessed against her.

I. MISHANDLING CLIENT FUNDS
In 1980, Larson prepared a will for Chris Reiten. The will devised $1,000 to Our Savior's Lutheran Church of Park River, North Dakota, and the balance of his estate to numerous relatives living in Canada and Norway. The will named a friend, Duncan Meagher, as personal representative. After Meagher's death in 1985, Larson drafted, and Reiten signed, a codicil to the will. The codicil named Larson as personal representative.
Reiten died on February 25, 1988. Larson applied for informal probate of the will, and she received letters testamentary on March 9, 1988. She served as personal representative and attorney for the estate.
Although the terms of the will were clear and unambiguous, Larson wrote a letter on August 25, 1988, to the beneficiaries under the will expressing her desire to give $25,000 each to three charities: the Good Samaritan Nursing Home, Our Savior's Lutheran Church, and Park River Bible Camp. The letter stated: "After you have read and considered this letter, please let me know if you feel the above would be the way Chris would like to be remembered." Two of the nine beneficiaries immediately objected to this distribution. Larson thereafter distributed 7/9ths of $25,000, that is $19,444.44, to each of the three charities. After these distributions were made, the remaining beneficiaries also objected.
Larson also mishandled several of Reiten's bank accounts. One account was a money market account that allowed three checks to be written each month. This account was originally in the names of Reiten and Meagher in joint tenancy. After Meagher's death in 1985, Reiten appointed *347 Harlan Grovom as power of attorney on the account. Grovom assisted Reiten in handling personal matters, ran errands for him, and paid bills by writing checks on the account. When Reiten died in 1988, this account totaled more than $65,000.
Clearly, Reiten became sole owner of the account by right of survivorship upon Meagher's death. See NDCC 30.1-31-09. Furthermore, the power of attorney to Grovom terminated immediately upon Reiten's death.[1]See 3 Am.Jur.2d Agency § 55 (1986). Unaccountably, Larson acted as if the remaining funds were not part of Reiten's estate and as if Grovom was entitled to those funds. In her August 25, 1988, letter to the beneficiaries, Larson said that Reiten had "designated" the account "for his Power of Attorney."
Larson offered to transfer the entire $65,000 from the account to Grovom but he refused, agreeing to accept only $33,000. Grovom had not at that time filed a claim for services performed for Reiten. Rather, Larson justified the payment on the grounds that the account was "designated" for the power of attorney. There was no basis in the law for her handling of the account.
Larson's handling of two other bank accounts is even more egregious. These accounts were in joint tenancy between Reiten and Meagher. One account listed the owners as Reiten and "Meagher, Duncan, Executor." The other listed Reiten and Meagher with no reference to Meagher as executor. When Reiten died, these accounts held over $47,000.
Under well-settled legal principles, Reiten became sole owner of these accounts upon Meagher's death. See NDCC 30.1-31-09; Olson v. Fraase, 421 N.W.2d 820, 831 (N.D.1988) ("ownership in a surviving joint tenant vests immediately upon the other's death"). Accordingly, the accounts should have been included in Reiten's estate and distributed as his will directed. Larson, however, took the position that these accounts created a joint tenancy with whomever was designated as the personal representative, not just Meagher, and she converted the funds to her own use. In her August 25, 1988, letter, she advised the beneficiaries that these accounts had been "designated" for the personal representative. There is no legal authority for Larson's claim that the accounts created a "generic" joint tenancy between Reiten and the personal representative of his estate.
The beneficiaries challenged Larson's actions. On February 6, 1990, the probate court removed Larson as personal representative, ordered the three charities to return the estate funds disbursed to them, and ordered Grovom and Larson to return funds removed from Reiten's bank accounts.
A petition for discipline was filed against Larson. The Board found that Larson's conduct violated NDRPC 1.15(b) (mishandling client funds); NDRPC 1.5(a) (charging unreasonable fees); NDRPC 1.7(b) (conflict of interest); NDRPLDD 1.2(A)(3) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); and NDCC 27-14-02(7) (conduct which tends to bring reproach upon the legal profession). Larson concedes that her conduct was unethical, and she does not challenge the Board's findings on these violations.

II. PRACTICE WHILE UNDER SUSPENSION
Larson was suspended from the practice of law from March 1, 1990 to June 11, 1990. Larson I. The Board found that Larson engaged in four separate instances of unauthorized practice during her suspension. The Board found that Larson's conduct violated NDPRLDD 1.2(A)(3) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and NDCC 27-14-02(2) (disobeyance or violation of a court order).

*348 A. Drafting Power of Attorney

The Board found that Larson drafted a power of attorney for a client during the period of suspension. Larson concedes this violation.

B. Land Sale
The Board found that during Larson's suspension she advertised for sale, accepted bids, and sold a parcel of land for clients. Under North Dakota law, persons selling real estate must be licensed. NDCC 43-23-05. There is a statutory exception for sales of real estate arising in the usual course of the practice of law. NDCC 43-23-07(2). Larson does not assert any applicable exception, nor does she challenge the Board's finding of a violation.

C. Small Claims Action
On March 5, 1990, Larson attempted to file an action in small claims court on behalf of a client. The court, aware of Larson's suspension, refused to file the action.
Larson asserts that she was not aware that her suspension was in effect on that date because she had not received notice of the resolution of her motion for rehearing in this court. Larson misconstrues the effect of a motion for rehearing. Our prior opinion, dated January 25, 1990, clearly ordered that Larson's suspension commence on March 1, 1990. Larson I, 450 N.W.2d at 774. Larson cites no rule, statute, or other authority that an order of suspension is stayed pending the decision of a motion for rehearing.[2]
By its terms, our order of suspension took effect on March 1, 1990. Larson's continued practice after that date was the practice of law while under suspension.

D. School Staff Meeting
During her suspension, Larson appeared at a special education staff meeting at Park River High School with Robert and Mary Ann Kjelland, parents of John Kjelland. Larson characterizes the Kjellands as family friends. Larson had previously attended such meetings with the Kjellands, and had been introduced as their attorney. The purpose of this meeting was to determine whether John would graduate or return the following year for further education. The Board found that Larson's appearance constituted the practice of law while under suspension.
Disciplinary counsel bears the burden of proving each alleged violation by clear and convincing evidence. NDPRLDD 3.5(C) and (D); Disciplinary Board v. McKennett, 349 N.W.2d 29, 31 (N.D.1984). Upon de novo review of this record, we conclude that disciplinary counsel has failed to prove by clear and convincing evidence that Larson's appearance at the school staff meeting constituted practice of law while under suspension. The record demonstrates that non-lawyers often appeared with parents and students at such meetings. At this meeting, Larson did not hold herself out as an attorney or make legal arguments on behalf of the Kjellands. The record is consistent with her assertion that she appeared as a "friend of the family," not as an attorney. We therefore conclude that her appearance did not constitute the practice of law.

E. Tax Work
Larson testified that one-third of her practice was tax work. She also conceded that she continued to prepare tax returns during her suspension. Disciplinary counsel contended to the Board that Larson's continued tax preparation for clients during her suspension constituted the practice *349 of law. The Board made no finding that this was the practice of law while under suspension.
Larson asserts that, because lay persons are permitted to prepare tax returns, this conduct is not prohibited during her suspension.
We discussed the scope of the prohibitions placed upon a suspended attorney in In re Christianson, 215 N.W.2d 920 (N.D. 1974). There, we specifically addressed the argument that a suspended or disbarred attorney should be permitted to perform any service that a lay person could lawfully perform:
A suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and his opinions are presumably more valuable on that account. We cannot accept the argument that a disbarred or suspended lawyer may engage in all activities which nonlawyers also perform. On the other hand, we are not willing to foreclose him from acts which he is permitted to perform by reason of alternate qualifications, such as a real estate broker's license.... A suspended lawyer may engage in some such activities if he is otherwise qualified to do so, but not if his qualifications come from having been a lawyer. For example, a suspended lawyer who is also a public accountant may prepare tax returns as a public accountant. But a suspended lawyer may not prepare the papers necessary to incorporate a corporation merely because one of the stockholders of the corporation might also be able to fill in blanks on a printed form by himself. When professional expertise enters into the activity, and when the activity is one which is customarily performed by lawyers, then such activity is forbidden to a suspended attorney, even though under some conditions members of other professions may sometimes be allowed to perform the same acts.
In re Christianson, 215 N.W.2d at 925-926. This implies that, under some circumstances, a suspended lawyer may prepare tax returns as a public accountant.
Courts in other states have held that preparation of tax returns by a suspended attorney is the practice of law that violates a suspension. Committee on Professional Ethics v. Mahoney, 402 N.W.2d 434, 436-437 (Iowa 1987); State v. Butterfield, 172 Neb. 645, 111 N.W.2d 543, 546-547 (1961). The Supreme Court of Nebraska states a sound rationale for its holding:
The respondent admits that he prepared deeds, mortgages, releases, and income tax returns during the period of his suspension. Admittedly respondent performed such work prior to his suspension. Some were performed in relation to real estate transactions in which he was the real estate broker, but in others he was not. It seems clear to us that the doing of such work is within the province of a lawyer to do. It is properly identified as the practice of law, whether or not it might under some circumstances be properly performed by others not admitted to the bar. An order of suspension deprives the suspended lawyer from performing any service recognized as the practice of law and which is usually performed by lawyers in the active practice of law. It is the contention of respondent that these services were performed in his capacity as a licensed real estate broker, notary public, abstracter, and loan agent. It is not necessary for us to determine in this case if and under what circumstances others might perform such services, although not admitted to the bar. A suspended lawyer, who in connection with his law office engages in other activities, is in no different position than the active lawyer who confines himself solely to the practice of law in determining if the suspension order was violated. Where one is generally known in a community as a lawyer, it might well be impossible to divorce two occupations closely related if the rule were otherwise. A suspended lawyer will not be heard to say that services recognized as within the practice of law were performed in some other capacity when he is called to account.
*350 State v. Butterfield, 111 N.W.2d at 546-547. This reasoning applies to preparation of tax returns by a suspended lawyer in the state where that lawyer has practiced, although it should not prevent that person from engaging in tax accounting elsewhere, someplace that the person is not known as a lawyer.
That reasoning applies to this case. Tax work was a substantial portion of Larson's practice. We will not construe a suspension to allow the attorney to continue, unabated, a significant part of her practice in the same community and state where she has practiced law. The public is likely to be misled if a suspended attorney is allowed to continue with "business as usual."
We believe that preparation of tax returns by Larson during her suspension was the practice of law in violation of the suspension. On the other hand, we recognize that the ambiguity of our prior precedent largely mitigates the culpability of this practice while Larson was under suspension.
A suspended attorney must refrain from all facets of the practice of law. See Committee on Professional Ethics v. Leed, 477 N.W.2d 390, 393 (Iowa 1991); Committee on Professional Ethics v. Wilson, 290 N.W.2d 17, 22-23 (Iowa 1980). In language drawn from Rule 118.12 of the Iowa Court Rules, we impose the following terms on Larson's suspension for these violations:
[The] attorney suspended shall refrain, during such suspension, from all facets of the ordinary law practice including, but not limited to, the examination of abstracts; consummation of real estate transactions; preparation of legal briefs, deeds, buy and sell agreements, contracts, wills, and tax returns; and acting as a fiduciary.
Unless otherwise ordered, the terms of every suspension or disbarment from the practice of law should be so limited.

III. SANCTIONS

A. Mishandling Client Funds
The Board recommended a suspension of seven months for Larson's misappropriation of funds in the Reiten estate. Larson argues that the Board failed to consider the mitigating factor of restitution of the funds by the three charities.
It is ironic that Larson asserts restitution as a mitigating factor in this case. None of the improperly distributed funds were returned to the estate until the beneficiaries commenced legal proceedings in the probate court that ordered return of the funds. Compelled restitution is not a mitigating factor. See North Dakota Standards for Imposing Lawyer Sanctions (NDSILS) 9.4(a), at North Dakota Century Code, Court Rules Annotated, p. 1023. Furthermore, only Grovom and the charities have fully reimbursed the estate.
Larson has paid back only $36,000 of the more than $47,000 she took from the estate, and we are informed that she is now seeking an offset for fees from the successor personal representative. Larson apparently still does not fully appreciate the extent of the harm that her unethical conduct has caused to the beneficiaries of the will. Even after the ordered restitution is completed, the beneficiaries will be out their legal expenses in seeking reimbursement. An "indifference to making restitution" is an aggravating factor in determining sanctions. NDSILS 9.22(j). Larson's indifference in making restitution aggravates rather than mitigates.
Additional aggravating factors are also present. This is the second disciplinary action against Larson for misappropriation of funds. Larson's conduct demonstrates a continuing pattern of attempting to rationalize her misappropriation of other people's money. See NDSILS 9.22(c). Also applicable are NDSILS 9.22(a) (prior disciplinary offense); NDSILS 9.22(b) (dishonest or selfish motive); NDSILS 9.22(d) (multiple offenses); NDSILS 9.22(h) (vulnerability of victims); and NDSILS 9.22(i) (substantial experience in the practice of law). Sadly, there is but a single mitigating factor under NDSILS 9.32(g), Larson's long-standing character and reputation in the community.
*351 We believe the recommendation of the Board unduly minimizes the seriousness of Larson's misconduct. Larson has engaged in a pattern of misappropriating clients' funds to her own use, and has tried to rationalize her conduct by disingenuous legal arguments. At best, Larson's conduct demonstrates a gross misunderstanding of the most rudimentary legal principles. Really, Larson misappropriated her clients' money, much of it for her own use.
The primary purpose of disciplinary proceedings is not to punish the attorney, but to protect the public. See In re Ellis, 439 N.W.2d 808, 810-811 (N.D.1989); In re Garcia, 366 N.W.2d 482, 486 (N.D. 1985). The public is not adequately protected by a seven-month suspension. We conclude that Larson's conduct warrants a two-year suspension from the practice of law in this state.

B. Practice While Under Suspension
The Board recommended a seven-month suspension for Larson's violation of the prior order of suspension. Although we have modified the Board's findings on this violation, we conclude that the recommended sanction is still appropriate. Larson is also suspended for seven months from the practice of law in this state, concurrent with the two-year suspension.

IV. ATTORNEY'S FEES
The Board recommended that Larson be assessed the costs and expenses of the disciplinary proceedings, including the attorney's fees of disciplinary counsel. Larson urges that the assessment of attorney's fees in this matter is not warranted.
We have long recognized that attorney's fees may be assessed against a disciplined attorney. See In re Pohlman, 248 N.W.2d 833, 837 (N.D.1976). NDPRLDD 1.3(D) states the general rule on costs and expenses in disciplinary cases:
Unless otherwise ordered by this court or the board, costs and expenses of all disability or discipline proceedings, including, without limitation, the costs of investigations, service of process, witness fees, and a court reporter's services, shall be assessed against the lawyer in any case where discipline is imposed or there is a transfer to disability inactive status or incapacitated status. All expenses so assessed shall be paid to the secretary of the disciplinary board.
In addition, NDPRLDD 1.3(A)(9) provides that costs and expenses of disciplinary proceedings may be assessed as a sanction.
The disciplinary system is necessary because some attorneys are unable to conform their conduct to the minimum ethical standards of the profession. It is only fair that attorneys whose unethical conduct creates the need for a disciplinary system contribute their direct share of the costs of maintaining that system. See In re Maragos, 285 N.W.2d 541, 546 (N.D.1979); In re Cieminski, 270 N.W.2d 321, 334-335 (N.D. 1978) (On Petition for Rehearing). Larson's conduct has caused considerable cost to the system.
We conclude that, under NDPRLDD 1.3(D), costs and expenses should ordinarily include reasonable attorney's fees of disciplinary counsel. Thus, unless otherwise ordered for appropriate reasons mitigating the usual sanctions, the costs and expenses to be paid by a disciplined attorney should include reasonable attorney's fees.

V. ORDER
For her mishandling of funds in the Reiten estate, Larson is hereby suspended from the practice of law in this state for a period of two years, commencing on June 15, 1992. For her practice of law while under suspension, Larson is hereby suspended from the practice of law in this state for seven months, concurrent with the first seven months of the two-year suspension. Larson is ordered to pay the costs and expenses of the disciplinary proceedings, including reasonable attorney's fees. Before Larson may practice law again in this state, even after the expiration of the period of her suspension, she must apply for reinstatement in accordance with NDPRLDD 4.5.
*352 ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., and DONALD L. JORGENSEN District Judge, concur.
DONALD L. JORGENSEN, District Judge, sitting as a member of the Court to fill the vacancy created by the resignation of Justice H.F. GIERKE III. Justice Johnson, not being a member of this Court at the time this case was heard, did not participate in this decision.
NOTES
[1] The Uniform Durable Power of Attorney Act, NDCC ch. 30.1-30, authorizes limited continuation of a power of attorney after the principal's death. NDCC 30.1-30-04(1) says that good faith actions taken by the holder of the power of attorney before learning of the principal's death are binding upon the principal's successors in interest. In this case, Larson and Grovom knew of Reiten's death when the money was withdrawn from the account.
[2] The parties did not cite NDRAppP 41(a). This rule says that "[t]he timely filing of a petition for rehearing will stay the mandate until disposition of the petition unless otherwise ordered by the court." This rule, however, does not apply here; no mandate is issued in a disciplinary proceeding. A mandate is the official mode of communicating the judgment of an appellate court to a lower court. Black's Law Dictionary 962 (6th ed. 1990). It is the vehicle for revesting jurisdiction in the lower court. Mancuso v. Beach, 187 Ill.App.3d 388, 135 Ill. Dec. 21, 23, 543 N.E.2d 256, 258 (1989). Because the opinion of this court is the final order in a disciplinary proceeding, no mandate issues.