2003 ND 82

**In the Matter of DISCIPLINARY ACTION AGAINST Bryan L. GIESE, a Member of the Bar of the State of North Dakota.**

**Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner,**

v.

**Bryan L. Giese, Respondent.**

**No. 20020315.**

Supreme Court of North Dakota.

June 3, 2003.

Paul W. Jacobson, Disciplinary Counsel, Bismarck, ND, for petitioner.

John M. Olson (argued), Olson Cichy, Bismarck, ND, and Bryan L. Giese (on brief), Mandan, ND, for respondent.

PER CURIAM.

[¶ 1]   Brian Giese petitioned for review of a hearing panel's report, which found he violated N.D.R. Prof. Conduct 1.8, 3.1, 3.2, and 8.4(e) and N.D.R. Lawyer Discipl. 1.2(A)(3) and recommended he be suspended from the practice of law for ninety days and pay costs of $2,714.68 and restitution of $1,824.24.   We conclude there is clear and convincing evidence Giese violated those rules, and we adopt the hearing panel's recommendations.

I

[¶ 2]   Giese was admitted to practice law in North Dakota on October 6, 1980. In 1989, Giese, his wife, and his parents entered into a contract for deed to purchase land from Wilmer and Alma Conitz. Giese was then representing Wilmer and Alma Conitz in a separate dispute regarding the land.   *See Conitz v. Conitz,* 467 N.W.2d 93 (N.D.1991).   In April 1989, Giese advised Wilmer and Alma Conitz in writing that he could not represent them in a legal capacity in the sale of the land and recommended they seek independent counsel regarding the transaction.   In May 1989, Wilmer and Alma Conitz executed a contract for deed to sell the land to the Gieses.   The contract for deed required the Gieses to make monthly payments to Wilmer and Alma Conitz for eighteen years, and the Gieses have never defaulted on any payments due under the contract for deed.

[¶ 3]   Wilmer Conitz died after the contract for deed was executed.   In September 2000, and with about seven years remaining under the terms of the contract for deed, Giese contacted Alma Conitz and asked her to execute and deliver to Giese

and his wife a warranty deed for the land. According to Giese, he promised to continue to make all the payments due under the contract for deed, and he asked Alma Conitz to sign the warranty deed because he did not want to have to deal with her daughter-in-law and her granddaughters in the future. Giese did not then advise Alma Conitz to seek independent counsel. Alma Conitz executed a warranty deed to the Gieses, which recited "[f]ull payment of [the] Contract for Deed" had been made when, in fact, it had not been paid in full. Giese recorded the warranty deed with the register of deeds.

[¶ 4] In November 2000, Alma Conitz retained an attorney to resolve issues about the warranty deed. Her attorney wrote to Giese in November 2000, demanding the Gieses reconvey the land to her pending payment under the terms of the contract for deed. Giese offered to immediately pay off the contract for deed, or to have appropriate deeds delivered to an escrow agent. Alma Conitz refused to accept immediate payment, and Giese then claimed her refusal was not "reasonable" under language in the contract for deed that precluded her from "unreasonably" withholding consent to prepayment. Giese again sought to have appropriate deeds delivered to an escrow agent. In December 2000, Alma Conitz sued the Gieses, seeking reconveyance of the land. Alma Conitz and the Gieses ultimately settled that action in October 2001, with the Gieses executing a quit claim deed to Alma Conitz.

[¶ 5] Disciplinary counsel filed a petition for discipline against Giese, alleging he violated N.D.R. Prof. Conduct 1.8, Conflict of Interest: Prohibited Transactions; N.D.R. Prof. Conduct 3.1, Meritorious Claims and Contentions; N.D.R. Prof. Conduct, 3.2, Expediting Litigation; N.D.R. Prof. Conduct 8.4(e), Misconduct;

and N.D.R. Lawyer Discipl. 1.2(A)(3). A hearing panel found Giese violated those rules and recommended suspending him from the practice of law for ninety days, imposing $2,714.68 in costs against him, and ordering him to pay $1,824.24 in restitution to the estate of Alma Conitz. Giese objected to the hearing panel's report.

[¶ ■■] The hearing panel had jurisdiction under N.D.R. Lawyer Discipl. 3.1(E). Giese filed a timely petition for review under N.D.R. Lawyer Discipl. 3.1(F). This Court has jurisdiction under N.D. Const. art. VI, § 3, N.D.C.C. § 27–14–01, and N.D.R. Lawyer Discipl. 3.1(F).

II

[¶ 7] We review disciplinary proceedings de novo on the record. *In re Edwardson*, 2002 ND 106, ¶ 9, 647 N.W.2d 126; *In re Crary*, 2002 ND 9, ¶ 7, 638 N.W.2d 23. We accord due weight to the hearing panel's findings and conclusions, but we do not act as a mere rubber stamp of the hearing panel's decision. *Edwardson*, at ¶ 9; *In re Swanson*, 2002 ND 6, ¶ 6, 638 N.W.2d 240. Disciplinary counsel bears the burden of proving each alleged violation of the disciplinary rules by clear and convincing evidence. *In re Disciplinary Action Against Seaworth*, 1999 ND 229, ¶ 24, 603 N.W.2d 176. Each disciplinary case must be considered upon its own facts to decide what discipline, if any, is warranted. *Edwardson*, at ¶ 9.

III

[¶ 8] Giese argues the hearing panel's report fails to recognize several of his procedural objections at the hearing and fails to state several facts.

A

[¶ 9] Giese argues the hearing panel's report fails to state the hearing panel granted his motion to supplement the rec-

ord with a supplemental affidavit and exhibits. Before the hearing panel issued its final report, it granted Giese's motion to supplement the record. Therefore, Giese's supplemental materials are part of the record before this Court, and Giese's argument about the hearing panel's failure to state its action in its report is meritless.

## B

[¶ 10] Giese argues the hearing panel's report fails to state he objected to the introduction into evidence of his answers to interrogatories and requests for admission. Giese argues the hearing panel should have excluded his answers to the requests for admission and his answers to the interrogatories because he was present and available to answer the same questions under oath and the written answers should have been used only to impeach or rebut his sworn testimony.

[¶ 11] Under N.D.R. Lawyer Discipl. 3.5(B), the North Dakota Rules of Civil Procedure and Rules of Evidence apply to disciplinary proceedings. *See Hegland v. McKechnie*, 2003 ND 37, ¶ 7, 657 N.W.2d 287. Under N.D.R.Civ.P. 33(c), answers to interrogatories are admissible into evidence in a civil action to the extent permitted by the rules of evidence, and Giese's answers to the requests for admission and to interrogatories are non-hearsay admissions by a party opponent and are admissible into evidence. *See* N.D.R.Civ. P. 36; N.D.R.Ev 801(d)(2).

[¶ 12] Giese broadly claims all the testimony of the attorney for Alma Conitz and her daughter-in-law should not have been admitted into evidence and should not be considered by this Court. Giese claims, because Alma Conitz died in 2002 and was not available to testify at the disciplinary hearing, he was denied the opportunity to "face and examine his accuser/s, not parties whose potential testimony was clearly objectionable." Giese has not identified any specific objectionable testimony in his brief to this Court, and his generalized claims that all of the testimony of the two witnesses should be stricken is overly broad. In the absence of a specific citation to objectionable testimony by the two witnesses and because the underlying facts in this case are largely undisputed, we reject Giese's claims about the admissibility of the testimony of the two witnesses.

## IV

[¶ 13] Giese argues the hearing panel's report fails to state certain findings, the hearing panel's findings do not support its conclusions and recommendation, and the disciplinary proceeding against him should be dismissed.

[¶ 14] The hearing panel found Giese did not advise Alma Conitz to seek independent counsel in September 2000 when he obtained the warranty deed from her and filed it with the register of deeds; the warranty deed erroneously recited full consideration had been paid for the contract for deed; and Giese refused to reconvey the land to Alma Conitz, which resulted in her lawsuit against him in which he acknowledged that there were no issues for trial and the court would order him to reconvey the property to her. The hearing panel concluded Giese's conduct violated N.D.R. Prof. Conduct 1.8, 3.1, 3.2, and 8.4(e), and N.D.R. Lawyer Discipl. 1.2(A)(3).

## A

[¶ 15] We initially consider whether or not Giese's conduct in obtaining the warranty deed from Alma Conitz and recording that deed violated N.D.R. Prof. Conduct 1.8, which provides:

RULE 1.8 CONFLICT OF INTEREST: PROHIBITED TRANSACTIONS

1. (a) Except for standard commercial transactions involving products or services that the client generally markets to others, a lawyer shall not enter into a business, financial or property transaction with a client unless:

    (1) The transaction is fair and reasonable to the client; and

    (2) After consultation, including advice to seek independent counsel, the client consents to the transaction.

[¶ 16] The hearing panel found Giese advised Wilmer and Alma Conitz to seek independent counsel when the contract for deed was signed in 1989, but Giese did not advise Alma Conitz to seek independent counsel in September 2000. Giese claims there was no attorney-client relationship between him and Alma Conitz in September 2000. He essentially claims he was dealing with Alma Conitz as a private party and not as her attorney in September 2000 when she willingly and voluntarily executed the warranty deed.

[¶ 17] In *Disciplinary Bd. v. McKechnie*, 2003 ND 22, ¶ 19, 656 N.W.2d 661 (quoting ABA/BNA Lawyers' Manual on Professional Conduct, at 31:101 (2002)), we said, "the lawyer-client relationship begins when the client acknowledges the lawyer's capacity to act in his behalf and the lawyer agrees to act for the benefit and under the control of the client." The existence of an attorney-client relationship does not depend on an express contract or the payment of fees, and may be implied from the parties' conduct. *McKechnie*, at ¶ 19. An attorney-client relationship is established when a party seeks and receives advice and assistance from an attorney on matters pertinent to the legal profession. *Matter of Petrie*, 154 Ariz. 295, 742 P.2d 796, 800 (1987). *See* 7 Am.Jur.2d *Attorneys at Law* § 136 (1997). The existence of an attorney-client relationship turns largely on the client's subjective belief it exists and looks to the nature of the work performed and to the circumstances under which confidences are divulged. *Petrie*, at 800–01; *Louisiana State Bar Ass'n v. Bosworth*, 481 So.2d 567, 571 (La.1986); *Matter of McGlothlen*, 99 Wash.2d 515, 663 P.2d 1330, 1334 (1983). The attorney-client relationship and the prohibition of transactions with a client continue as long as the influence arising from the attorney-client relationship continues. *McGlothlen*, at 1335. *See Petrie*, at 801. *See also* 7 Am.Jur.2d *Attorneys at Law* at § 145. The existence of an attorney-client relationship is a question of fact. *Moen v. Thomas*, 2001 ND 110, ¶ 13, 628 N.W.2d 325.

[¶ 18] According to Giese, in September 2000 Alma Conitz and he did not have a "continuing, ongoing attorney/client relationship," and their relationship "would come and go at times, and basically all's [sic] I was doing for her at that point in time was income taxes on an annual basis." Giese testified he represented both Wilmer and Alma Conitz on various items, including tax work, between 1989 and September 2000. This Court has said tax work is the practice of law. *See Disciplinary Bd. v. Larson*, 485 N.W.2d 345, 350 (N.D.1992). Giese also testified he prepared a will for Alma Conitz, which she signed on July 23, 1998. This record also includes a November 3, 2000, letter from Giese to Alma Conitz, which stated:

    I write this letter in order to follow up on statements or direction I have received from your daughter-in-law, Betty Mischel. Betty has told me that she wants me to change or amend your Last Will and Testament in several respects. I have thought about this for several

days and have decided that as an attorney, I can not morally and ethically assist you in this matter. It is my opinion that I would be going against Wilmer's wishes, desires and directives to change your Will. If you insist on doing so, I suggest you retain another attorney to do so.

There are several matters, however that we must take care of and which I will assist you, for a small fee/costs only:

1.  Open a simple estate/probate file on Wilmer's estate in order to convey his interest in the rural property to you the surviving spouse. Please get Wilmer's original Last Will & Testament to me.
2.  We need to get Farmers Home Administration (now called the FSA) to release and satisfy the old real estate mortgages that Kenneth and Betty Conitz signed and gave to FmHA many years ago. In this regard, I need the abstracts of title to the property so we can get this cleared up. Please go to New Salem, or wherever, and get the abstracts for me.

If you need a ride to travel, I will assist you.

I look forward to many years of business relationship and friendship with you. Please keep your health up to the best of your ability.

[¶ 19] Giese was advising Alma Conitz on matters pertaining to the legal profession when he annually prepared her taxes and when he declined the request to change her will for moral and ethical reasons but stated there were several probate matters "we must take care of" and offered to assist her. Giese's November 2000 letter to Alma Conitz is clear evidence he provided her with legal advice and viewed himself as her attorney during this time period. Although Giese claims all his files with Alma Conitz had been closed and he had no attorney-client relationship with her in September 2000, his communications with Alma Conitz establish a continuous pattern of legal advice by him. We conclude the evidence clearly and convincingly establishes the influence arising from the attorney-client relationship between Giese and Alma Conitz existed in September 2000, and we reject Giese's claim he did not have an attorney-client relationship with her in September 2000.

[¶ 20] Giese nevertheless argues his 1989 advice to Wilmer and Alma Conitz was never withdrawn and applies to his September 2000 conduct with Alma Conitz. We disagree.

[¶ 21] Giese's 1989 letter to Wilmer and Alma Conitz provided, in part:

As you know, we have discussed over the past year or more the possibility or idea of my wife and me purchasing your farm from you. At first this was just an idea or thought, but over the past couple of months we have done some serious negotiations regarding this matter and it appears now that we have come very close to closing a written contract in this regard with my parents also being involved as buyers.

I write this letter in order to confirm the fact that we have discussed and I have informed you that I can not represent you in a legal capacity relative to this matter because of my involvment [sic] as a buyer under the proposed contract. As such, I recommend that you retain your own independent attorney or legal counsel, and / or be completely sure from your own perspective or interests as to the exact terms and conditions of the document. Further, do not sign the contract for deed document unless you are completely satisfied with its written terms and conditions.

While I feel that you and I have been completely honest and up-front with each other relative to this contract and the negotiations we have gone through, I want to avoid completely the prospect that at a later date either you or any of your representatives or heirs, would allege that I took advantage of you regarding any aspect of this transaction.

[¶ 22] The parties have cited no authority regarding the continued validity of Giese's 1989 advice in a similar situation, and we have found none. Giese testified he "dealt with [Wilmer Conitz] pretty much exclusively" in 1989. Business transactions between an attorney and client are fraught with pitfalls and traps, and an attorney, with his superior knowledge and education, engages in business transactions with a client at the attorney's peril and is held to the highest standards. *See In re Lowther*, 611 S.W.2d 1, 2 (Mo. 1981). The attorney must take precautions to ensure the client is fully aware of the details and risks of the transaction, and a passing suggestion to consult a second attorney does not discharge an attorney's obligation. *See In re Smyzer*, 108 N.J. 47, 527 A.2d 857, 861–62 (1987). Although Giese's 1989 advice to Wilmer and Alma Conitz may have been sufficient to remove the contract for deed from the auspices of a prohibited transaction in 1989, we reject Giese's claim the earlier advice governs his conduct in September 2000. The September 2000 transaction involved issues different from the 1989 sale of land by a contract for deed, and the 2000 transaction was not contemplated by the terms of Giese's 1989 advice. We reject Giese's claim that his 1989 advice to Wilmer and Alma Conitz continued to govern his September 2000 conduct with Alma Conitz, and we conclude the evidence clearly and convincingly establishes Giese's September 2000 conduct violated N.D.R. Prof. Conduct 1.8.

## B

[¶ 23] The hearing panel's other findings involve Giese's response to the lawsuit by Alma Conitz. The hearing panel found:

4. Alma Conitz retained the services of another attorney to secure the reconveyance of the property. The new attorney wrote to [Giese] on November 6, 2000, demanding that [he] immediately convey the property by warranty deed back to Alma Conitz. [Giese] refused to do so. On December 18, 2000, the new attorney served [Giese] with a Summons and Complaint seeking reconveyance of the property to Alma Conitz. The trial was scheduled for October 17, 2001. At a final pre-trial conference by telephone on October 3, 2001, [Giese] acknowledged that there were no issues for trial and he conceded that the court would order him to reconvey the property to Alma Conitz. [Giese] executed a quit claim deed on October 4, 2001, with his wife, which reconveyed the property to Alma Conitz as she had previously requested in November, 2000. Her costs for this litigation were $1,824.24.

. . . .

The conduct of . . . Giese violated the following Rules of Professional Conduct:

. . . .

2. RULE 3.1, MERITORIOUS CLAIMS AND CONTENTIONS, RPC, which provides that a lawyer shall not make or controvert an issue in a proceeding unless there is a basis for doing so that is not frivolous, as [Giese] defended and prolonged the litigation to reconvey the property to Alma Conitz without any valid defense;

3. RULE 3.2, EXPEDITING LITIGATION, RPC, which provides that a lawyer shall make reasonable efforts to

expedite litigation consistent with the best interest of the client, in that [Giese] unnecessarily prolonged the litigation described above from December, 2000, until October, 2001, when he should have reconveyed the property to Alma Conitz at or before the time when the suit was commenced;

4. RULE 1.2A(3), NDRLD, which provides that it is misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation, as [Giese] filed with the Register of Deeds the warranty deed he had obtained from Alma Conitz even though the contract for deed had not been fully satisfied and paid in full as recited in the warranty deed and he had not informed Alma Conitz that he was going to file the warranty deed with the Register of Deeds;

5. RULE 8.4(e), MISCONDUCT, RPC, which provides it is professional misconduct to engage in conduct enumerated in the North Dakota Century Code as a basis for revocation or suspension of a lawyer's certificate of admission, through violation of § 27–13–01(2), NDCC, maintaining a defense to a claim that is not honestly debatable under the law, § 27–13–01(6), NDCC, employing means that are not consistent with truth and honor, and § 27–14–02(7), NDCC, committed any other act that brings reproach upon the legal profession, as set forth in the Findings.

[¶ 24] Giese was a named defendant in the action by Alma Conitz. Although Giese argues he was sued in his capacity as a private party and not in his capacity as an attorney, his argument ignores that the lawsuit by Alma Conitz emanated from his attorney-client relationship with her. Attorneys are officers of the court, *see* N.D.R. Prof. Conduct, Preamble, Scope and Terms, and this Court has disciplined attorneys for conduct as litigants in a civil action. *Disciplinary Bd. v. Bard*, 519 N.W.2d 286 (N.D.1994). Giese's obligations as an attorney and officer of the court did not diminish or terminate simply because he was a named party in the lawsuit. Rather, Giese was a party in that lawsuit as a result of conduct emanating from his attorney-client relationship with Alma Conitz. This record establishes that Giese's conduct necessitated the lawsuit by Alma Conitz and unnecessarily delayed the proper resolution of that action. We conclude the evidence clearly and convincingly establishes Giese's conduct violated N.D.R. Prof. Conduct 3.1, 3.2, and 8.4(e) and N.D.R. Lawyer Discipl. 1.2(A)(3).

## V

[¶ 25] The hearing panel recommended Giese be suspended from the practice of law for ninety days. In deciding the appropriate sanction for a violation of the rules of professional conduct, we find guidance in the North Dakota Standards for Imposing Lawyer Sanctions. *Edwardson*, 2002 ND 106, ¶ 21, 647 N.W.2d 126.

[¶ 26] Standard 4.3, N.D. Stds. Imposing Lawyer Sanctions, provides:

4.3 Failure to Avoid Conflicts of Interest.

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving conflicts of interest:

. . . .

4.32 Suspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client.

Standard 6.2, N.D. Stds. Imposing Lawyer Sanctions, provides:

6.2 Abuse of the Legal Process.

Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving failure to expedite litigation or bring a meritorious claim, or failure to obey any obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists:

. . . .

6.22 Suspension is generally appropriate when a lawyer knows that he or she is violating a court order or rule, and causes injury or potential injury to a client or a party, or causes interference or potential interference with a legal proceeding.

[¶ 27] Considering Giese's professional misconduct and the injury caused to Alma Conitz, we agree with the hearing panel that a ninety-day suspension is appropriate under the circumstances of this case. We order Giese to pay restitution of $1,824.24 to the estate of Alma Conitz and costs of $2,714.68 for this proceeding.

VI

[¶ 28] We conclude Giese violated N.D.R. Prof. Conduct 1.8, 3.1, 3.2, and 8.4(e) and N.D.R. Lawyer Discipl. 1.2(A)(3), and we order he be suspended from the practice of law for ninety days, effective August 1, 2003, pay restitution of $1,824.24 to the estate of Alma Conitz, and pay costs of $2,714.68 for this disciplinary proceeding.

[¶ 29] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, WILLIAM A. NEUMANN, MARY MUEHLEN MARING and CAROL RONNING KAPSNER, JJ., concur.