709 N.W.2d 717 (2006)
2006 ND 13
In the Matter of the APPLICATION FOR DISCIPLINARY ACTION AGAINST Bryan L. GIESE, A Member of the Bar of the State of North Dakota.
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner
v.
Bryan L. Giese, Respondent.
No. 20050158.
Supreme Court of North Dakota.
January 31, 2006.
*718 Paul W. Jacobson, Disciplinary Counsel, Bismarck, N.D., for petitioner.
Bryan L. Giese, pro se, Mandan, N.D., for respondent.
PER CURIAM.
[¶ 1] Bryan L. Giese objects to a report by a hearing panel of the Disciplinary Board which found he violated N.D.R. Prof. Conduct 3.3, 5.5, and 8.1, and recommended he be suspended from the practice of law for 60 days and pay $1,772.05 in costs for the disciplinary proceeding. We conclude there is clear and convincing evidence Giese violated those rules, and we adopt the hearing panel's recommendations.

I
[¶ 2] On June 3, 2003, this Court suspended Giese from the practice of law for 90 days, effective August 1, 2003, for violating N.D.R. Prof. Conduct 1.8, 3.1, 3.2, and 8.4(e), and N.D.R. Lawyer Discipl. 1.2(A)(3). Disciplinary Bd. v. Giese, 2003 ND 82, ¶ 28, 662 N.W.2d 250. We concluded the evidence clearly and convincingly established Giese engaged in a prohibited real estate transaction with a client, and his conduct necessitated ensuing litigation about that transaction, which he unnecessarily delayed. Id. at ¶¶ 22, 24.
[¶ 3] In June and July 2003, Giese prepared legal documents for Ronald and Nancy Getsman, and on August 5, 2003, they scheduled an August 12, 2003, appointment with Giese at his office to discuss those documents. The Getsmans subsequently learned Giese had been suspended from the practice of law, effective August 1, 2003, and they cancelled the appointment. Giese admits he did not send a notice of suspension by registered or certified mail to Getsmans or to any other clients within ten days after this Court's decision on June 3, 2003, as required by N.D.R. Lawyer Discipl. 6.3.
[¶ 4] According to Giese, he entered into an agreement with attorney Benjamin Pulkrabek in which Giese agreed to work for Pulkrabek as a legal clerk or paralegal and Pulkrabek agreed to assist Giese's past and future clients with their current and ongoing legal needs. According to Giese, he closed his office on July 31, 2003, and he moved into Pulkrabek's office as a legal assistant. In a written statement, Giese explained that Getsmans scheduled:
an appointment for August 12th. They anticipated bringing with them additional information in regard to changes to the first draft of the will or POA. I didn't represent myself as an attorney nor did I take any information nor consultation *719 over the telephone. I planned to call them just prior to the appointment and either meet directly at attorney Benjamin Pulkrabek's office or to greet them at my old office and immediately take them directly to Mr. Pulkrabek's office for the office visit.
On August 12, 2003, I received a message from Ronald Getsman on my telephone answering machine stating that he and his wife decided to cancel the appointment and not have any further dealings with me. Upon receiving the message, on the afternoon of August 12, 2003, I made one last telephone call to Mr. Getsman to give him the details of attorney Benjamin Pulkrabek's law firm and my working for/with Mr. Pulkrabek, to assist past and present persons with their legal matters. I advised Mr. Getsman that I did not wish to cause any harm or detriment to any person or past clients and therefore had made proper arrangements for attorney Pulkrabek to finalize any matters that I was not able to complete because of the suspension of my license. I further informed Mr. Getsman that it was his choice to continue with attorney Ben Pulkrabek or not[.] He stated that he did not wish to do so and asked me if he owed me anything for fees. I told him that since the process was not finalized that there would be no charge.
[¶ 5] Giese claims he did not hold himself out to be a lawyer and he did not engage in the practice of law during his suspension. On September 15, 2003, he filed an affidavit with this Court, which stated he had complied with, or substantially complied with, N.D.R. Lawyer Discipl. 6.3, and he had not engaged in the practice of law or rendered legal advice during his suspension.
[¶ 6] In September 2004, disciplinary counsel petitioned for discipline against Giese, alleging Giese had engaged in the unauthorized practice of law in violation of N.D.R. Prof. Conduct 5.5; he had made a false statement to a tribunal in violation of N.D.R. Prof. Conduct 3.3; and he had made a false statement in connection with a disciplinary matter in violation of N.D.R. Prof. Conduct 8.1. A hearing panel found Giese violated those rules and recommended he be suspended from the practice of law for 60 days and pay $1,772.05 in costs for the disciplinary proceeding.

II
[¶ 7] "We review disciplinary proceedings de novo on the record." Giese, 2003 ND 82, ¶ 7, 662 N.W.2d 250. We give due weight to the hearing panel's findings, conclusions, and recommendations, but we do not act as a rubber stamp of the hearing panel's decision. Id. Disciplinary counsel must prove each alleged violation of the disciplinary rules by clear and convincing evidence. Id. A disciplinary case is considered on its own facts to determine the appropriate discipline. Id.

III
[¶ 8] Giese argues he did not hold himself out as a lawyer, or practice law while he was suspended. He argues that, during his suspension, it was appropriate for him to work for Pulkrabek as a law clerk or paralegal and for Pulkrabek to handle legal matters for Giese's clients.
[¶ 9] Rule 5.5, N.D.R. Prof. Conduct, provides, in part:
(a) A lawyer shall not practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction.
. . . .
(d) A lawyer who is not admitted to practice in this jurisdiction shall not represent or hold out to the public that the lawyer is admitted to practice law in this jurisdiction.
*720 [¶ 10] In Disciplinary Bd. v. Larson, 485 N.W.2d 345, 349 (N.D.1992) (quoting In re Christianson, 215 N.W.2d 920, 925-26 (N.D.1974)), this Court discussed the scope of prohibitions placed upon a suspended attorney:
A suspended lawyer is not the same as a layman. The public knows that he has a legal education, that he has engaged in the practice of law, and that his work and his opinions are presumably more valuable on that account. We cannot accept the argument that a disbarred or suspended lawyer may engage in all activities which nonlawyers also perform. On the other hand, we are not willing to foreclose him from acts which he is permitted to perform by reason of alternate qualifications, such as a real estate broker's license. . . . A suspended lawyer may engage in some such activities if he is otherwise qualified to do so, but not if his qualifications come from having been a lawyer. For example, a suspended lawyer who is also a public accountant may prepare tax returns as a public accountant. But a suspended lawyer may not prepare the papers necessary to incorporate a corporation merely because one of the stockholders of the corporation might also be able to fill in blanks on a printed form by himself. When professional expertise enters into the activity, and when the activity is one which is customarily performed by lawyers, then such activity is forbidden to a suspended attorney, even though under some conditions members of other professions may sometimes be allowed to perform the same acts.
[¶ 11] In Larson, at 350, this Court refined that language from Christianson, stating suspended attorneys may not continue, unabated, a significant part of their practice in the same community and state where they have practiced law because the public may be misled if suspended attorneys are allowed to continue with "`business as usual.'" This Court said unless otherwise ordered, a suspended attorney must refrain from all facets of the ordinary practice of law. Larson, at 350.
[¶ 12] Here, the hearing panel's recommendation about the unauthorized practice of law did not make a specific finding about Giese's status as a law clerk for Pulkrabek. Rather, the hearing panel's recommendation was limited to his failure to communicate his status to Getsmans in July 2003, and his communications with Getsmans in August 2003, when scheduling a meeting at his office for August 12, 2003. The hearing panel found Giese held himself out as a licensed attorney and did not inform the Getsmans that he had been suspended from the practice of law, effective August 1, 2003. The hearing panel also found Giese had an opportunity to notify the Getsmans in July 2003, that he would be suspended from the practice of law in August 2003, and his failure to disclose his upcoming suspension misled the Getsmans into believing he was authorized to practice law in August 2003.
[¶ 13] The essence of the hearing panel's recommendation is that Giese's failure to disclose his upcoming suspension misled the Getsmans into believing he was authorized to practice law in North Dakota in August 2003. Other courts have held that the unauthorized practice of law includes suspended attorneys' conduct in holding themselves out as being authorized to practice law in the state. Farnham v. State Bar of California, 17 Cal.3d 605, 131 Cal.Rptr. 661, 552 P.2d 445, 449 (1976); Cadwell v. State Bar of California, 15 Cal.3d 762, 125 Cal.Rptr. 889, 543 P.2d 257, 261-62 (1975); In Matter of Application for the Reinstatement of Peterson, 274 N.W.2d 922, 926 (Minn.1979). We agree with those courts that the unauthorized practice of law includes the holding out by a suspended attorney that he is entitled to *721 practice law in this state. See N.D.R. Prof. Conduct 5.5(d).
[¶ 14] Giese's written statement about his professional relationship with Getsmans and Getsmans' testimony about the events in August 2003 clearly indicate Giese did not advise Getsmans about his status until August 2003 and he "planned to call them just prior to the [August] appointment and either meet directly at. . . Pulkrabek's office or to greet them at my old office." We conclude the evidence clearly and convincingly shows Giese held himself out as an attorney and misled the Getsmans into believing he was a licensed attorney in August 2003. We conclude that conduct constitutes the unauthorized practice of law.
[¶ 15] Giese admits he was tardy in sending notices of his suspension to his clients, but claims he substantially complied with N.D.R. Lawyer Discipl. 6.3. Giese argues he did not file a false statement with a tribunal.
[¶ 16] The hearing panel found:
Giese filed an Affidavit . . . with the Supreme Court, dated September 15, 2003, in which he stated that he had complied with, or substantially complied with, Rule 6.3, NDRLD, and that he had not been engaged in the practice of law[] during the month of August 2003, both of which statements were not true. Rule 6.3(F), NDRLD, does not permit "substantial compliance", but requires "full compliance". Filing an affidavit which suggests substantial compliance is a violation of the Rule of Candor towards the tribunal.
RULE 8.1, RPC, BAR ADMISSION AND DISCIPLINARY MATTERS, . . . provides that a lawyer in connection with a disciplinary matter, shall not knowingly make a false statement of material fact, [and] Giese filed an Affidavit. . . with the Supreme Court, dated September 15, 2003, in which he stated that he had complied with, or substantially complied with, Rule 6.3, NDRLD, and that he had not been engaged in the practice of law during the month of August 2003, both of which statements were not true.
[¶ 17] Rule 6.3(A), N.D.R. Lawyer Discipl., requires a lawyer, within ten days after the date of the order of suspension, to give notice by registered or certified mail to all clients represented in pending matters. The notice must state the place of residence of the client and the lawyer, must include the order of the court, and must state that the lawyer cannot act as a lawyer after the effective date of the order. Id. Rule 6.3(F), N.D.R. Lawyer Discipl., requires an attorney, within ten days of the effective date of an order of suspension, to file an affidavit with the court showing "full compliance" with the notice provisions of the rules for lawyer discipline. Rule 8.1, N.D.R. Prof. Conduct, prohibits a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter.
[¶ 18] Giese's affidavit stated he had complied with, or had substantially complied with, the requirements of N.D.R. Lawyer Discipl. 6.3, and he had not engaged in the practice of law in August 2003. Our rules require "full" compliance with the rules for lawyer discipline, not "substantial" compliance. Although our rules require full compliance, the affidavit submitted by Giese asserts he "substantially complied" with N.D.R. Lawyer Discipl. 6.3. Therefore, for purposes of determining whether Giese committed a violation of N.D.R. Prof. Conduct 8.1, by making a false statement of material fact in connection with a disciplinary matter, we will examine whether his conduct amounted even to substantial compliance. By doing so, we do not imply substantial compliance with the rules *722 is acceptable; rather we do so to show that Giese's conduct failed to meet a lower standard than that required by the Rules of Professional Conduct.
[¶ 19] At the hearing, Giese acknowledged he "did not undertake everything that was required by that rule," and he did not comply with the rule until he was contacted by this Court and informed that his failure to comply with the rule could affect the terms of his reinstatement. Giese did not provide appropriate notice at all to the Getsmans who were expecting to meet with him during the period of suspension. Giese's failure to communicate his suspension to the Getsmans during July or August does not amount to minimal, much less substantial, compliance with Rule 6.3. Giese's affidavit demonstrates a lack of candor about the requirements for compliance with the rules for lawyer discipline and about his compliance with those rules.
[¶ 20] We conclude this record clearly and convincingly establishes Giese violated N.D.R. Prof. Conduct 8.1, when he stated in his affidavit that he had complied with, or substantially complied with, N.D.R. Lawyer Discipl. 6.3 and that he had not been engaged in the practice of law during the month of August 2003. We conclude the evidence clearly and convincingly establishes Giese failed to comply with the requirements of N.D.R. Lawyer Discipl. 6.3, and he held himself out as a licensed attorney in August 2003.

IV
[¶ 21] Giese argues the hearing panel's recommended sanction is too harsh and he should only be admonished and required to pay costs not to exceed $500 for the disciplinary proceeding.
[¶ 22] In determining the appropriate discipline for Giese, the hearing panel applied N.D. Stds. Imposing Lawyer Sanctions 7.2, which provides that a suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession and causes injury or potential injury to a client, the public, or the legal system. The hearing panel concluded Giese failed to notify clients as required by N.D.R. Lawyer Discipl. 6.3 and engaged in a process of meeting clients in person at his office and giving them the opportunity to be taken to Pulkrabek, with whom Giese had an agreement to act as a paralegal. The hearing panel concluded Giese's conduct reflected a knowing violation of N.D.R. Lawyer Discipl. 6.3. The hearing panel cited N.D. Stds. Imposing Lawyer Sanctions 6.12, which provides that a suspension is generally appropriate when a lawyer knows that a false statement is being submitted to the court, and N.D. Stds. Imposing Lawyer Sanctions 6.13, which provides that a reprimand is generally appropriate when a lawyer is negligent in submitting false statements to a court. The hearing panel concluded the misleading nature of Giese's affidavit reflected intentional misconduct and warranted a suspension. The hearing panel also considered prior disciplinary offenses as an aggravating factor in imposing discipline against Giese. Although Giese may have been experiencing some personal issues regarding his mother's illness and death in late July and early August 2003, those issues were not necessarily present when this Court issued its decision on June 3, 2003, which is the relevant time frame for the notice required by N.D.R. Lawyer Discipl. 6.3(A).
[¶ 23] We conclude Giese violated N.D.R. Prof. Conduct 3.3, 5.5, and 8.1, and we order he be suspended from the practice of law for 60 days, effective April 3, 2006, and he pay $1,772.05 in costs for the disciplinary proceeding.
*723 [¶ 24] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.