**In the Matter of Robert F. DiPIPPO.**

**No. 96–235–M.P.**

Supreme Court of Rhode Island.

July 10, 1996.

David Curtin, for Plaintiff.

Gary E. Blais, Providence, for Defendant.

**OPINION**

PER CURIAM.

This disciplinary matter comes before us pursuant to Article III, Rule 6(b) of the Supreme Court Rules of Disciplinary Procedure. The Disciplinary Board of the Supreme Court of Rhode Island (board) voted to recommend sanctions against the respondent-attorney (respondent) following a full disciplinary hearing. The respondent, Robert F. DiPippo, came before the court pursuant to an order directing him to appear and show cause why he should not be disciplined. After considering the findings and recom-

mendations of the board and the arguments presented by the respondent, we shall impose sanctions for the following reasons.

The material facts giving rise to this proceeding are not in dispute. In 1988 respondent was retained by a client to represent her in the filing and prosecution of a divorce action against her then husband. The respondent represented the client through the conclusion of the divorce case. Among the issues involved in the divorce action were custody of the minor children of the marriage, support for those children, and distribution of the marital assets.

While respondent was representing the client in the divorce action, a consensual sexual relationship developed between them. There were no allegations of coercion in the relationship, and there was no exchange of sexual favors for legal services. Indeed, as respondent testified at the disciplinary hearing, he contemplated marriage to the client once the divorce was completed.

In September of 1990 while the romantic relationship between respondent and his client was in progress, she entered into a purchase-and-sale agreement to buy a home. At respondent's suggestion she made application to the Coventry Credit Union (credit union) for sufficient funds, to be secured by a mortgage, to finance the purchase. As part of the application process she represented to the credit union that she was employed by respondent as his secretary and had weekly earnings of approximately $380.

The credit union sought verification of the information provided by the client in the loan application. A request-for-verification-of-employment form was mailed by the credit union to respondent. On September 25, 1990, respondent completed the verification form, certifying that the client was employed by him as an "independent contractor" performing bookkeeping and filing duties, that her prospects of continued employment by him were good and that she had weekly earnings from him of approximately $300. The respondent returned that verification form to the credit union. The mortgage application was subsequently withdrawn by the client,

and no funds were loaned to her by the credit union.

The board determined that the representations made by respondent to the credit union were false. The client had never been employed by respondent as an employee or an independent contractor. She never received a pay check or any other form of remuneration from respondent. On occasion she assisted him in filing papers with the courts, and on one occasion she checked the license plates of cars parked at a particular location. She received no compensation for these services.

It was the conclusion of the board that respondent's conduct of engaging in sexual relations with a divorce client, when the issues in the divorce case included child custody, support, and division of marital assets, violated Article V, Rules 1.7(b) and 1.17(a)(1) of the Supreme Court Rules of Professional Conduct. The board further concluded that respondent's actions in certifying to the truth of false statements in the request-for-verification-of-employment form violate Rule 8.4(c) of the rules.

■ Rule 1.7(b) provides, in pertinent part:

"A lawyer shall not represent a client if the representation of that client may be materially limited * * * by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected; and

(2) the client consents after consultation."

There is no specific prohibition contained within the Rules of Professional Conduct regarding sexual activities between attorneys and their clients. We are cognizant both of the debate within the legal profession of the propriety of attorneys' engaging in sexual relations with clients and of the adoption of express rules by a number of jurisdictions attempting to regulate the sexual conduct of attorneys. We also note that several juris-

dictions have considered and rejected such a rule.[1]

■ In *Carter v. Kritz*, 560 A.2d 360 (R.I. 1989), we declined the opportunity to establish broad guidelines for the sexual activities of members of the bar. However, when the sexual activities of an attorney involve conduct that demonstrates an unfitness to practice law, discipline must be imposed. *Id.* at 361 (citing *Matter of Wood*, 265 Ind. 616, 624, 358 N.E.2d 128, 133 (1976)). Any competent attorney practicing in the area of domestic-relations law must be aware that the sexual conduct of a divorce client may have significant bearing on that client's ability to secure child custody and in the determination of the distribution of marital assets. G.L.1956 § 15–5–3.1 and § 15–5–16. The attorney who engages in sexual relations with his or her divorce client jeopardizes the client's rights. The lawyer's own interest in maintaining the sexual relationship creates an inherent conflict with the proper representation of the client.

■ For the same reasons we agree with the board that respondent violated Rule 1.17(a)(1) when he continued to represent the divorce client. That rule provides, in pertinent part:

"**Declining or Terminating Representation.** * * * a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

(1) the representation will result in violation of the rules of professional conduct or other law."

An attorney who desires to engage in sexual relations with a divorce client, when issues of child custody, support, and distribution of marital assets are at stake, must choose between furthering an intimate relationship or acting as a lawyer for the client. It is impermissible to do both.

■ Turning to the issue of the certification of the false information to the credit union, we conclude that it is clear that this conduct violates Rule 8.4(c) of the Rules of Professional Conduct. Rule 8.4(c) states:

"Misconduct.—It is professional misconduct for a lawyer to:

* * *

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

The respondent knew, or reasonably should have known, that the credit union would rely in part on the verification of the client's employment in assessing whether to loan funds to the client for the purchase of real estate. Indeed, G.L.1956 § 11–18–6 provides:

"**False financial statement to obtain loan or credit.**—No person shall knowingly make or cause to be made, either directly or indirectly, or through any agency whatsoever, any false statement in writing, with intent that it shall be relied upon, respecting the financial condition, or means or ability to pay, of himself or herself, or any other person, firm, or corporation, in whom he or she is interested, or for whom he or she is acting, for the purpose of procuring in any form whatsoever, either the delivery of personal property, the payment of cash, the making of a loan or credit, the extension of a credit, the discount of an account receivable, or the making, acceptance, discount, sale, or endorsement of a bill of exchange, or promissory note, for the benefit of either himself or herself or such person, firm, or corporation."

Such conduct is punishable as a misdemeanor under the provisions of § 11–18–9.[2] Accordingly, the conclusion of the board that respondent violated the provisions of Rule 8.4(c) is amply supported by the record.

■ It was the recommendation of the board that the respondent be suspended from the practice of law for a period of fifteen months. Although we agree that the respondent violated the rules charged, we believe that a fifteen month suspension is not warranted by these facts. The respondent's errors in judgment were the result of a lack

---

1. *See* Bill Ibelle, *"Should Attorney/Client Sex Be Banned?"* 95 LWUSA 1129 (December 4, 1995).

2. The respondent has not been criminally charged for this conduct.

of objectivity and not indicative of an intent to defraud. Therefore, we order that the respondent be suspended from the practice of law for a period of three months, said period of suspension to commence thirty days from the date of this opinion. In order to protect the interests of his current clients, the respondent shall file with the clerk of this court either a list of all active clients or a statement by an attorney or attorneys who will assume responsibility to protect those clients' interests.

MURRAY, J., not participating.