714 N.W.2d 469 (2006)
2006 ND 107
In the Matter of the APPLICATION FOR DISCIPLINARY ACTION AGAINST C. Charles CHINQUIST, a Member of the Bar of the State of North Dakota
Disciplinary Board of the Supreme Court of the State of North Dakota, Petitioner
v.
C. Charles Chinquist, Respondent.
No. 20050359.
Supreme Court of North Dakota.
May 16, 2006.
*470 Brent J. Edison, Assistant Disciplinary Counsel, Bismarck, N.D., for petitioner.
C. Charles Chinquist (pro se), Fargo, N.D., respondent.
PER CURIAM.
[¶ 1] C. Charles Chinquist and counsel for the Disciplinary Board object to a hearing panel report finding that Chinquist violated N.D.R. Prof. Conduct 1.5(a) and (b), 1.8(a), and 1.15(a) and (f), and recommending that Chinquist be suspended from the practice of law for 30 days and that he pay $5,289.45 for the costs and expenses of the disciplinary proceeding. We conclude there is clear and convincing evidence Chinquist violated N.D.R. Prof. Conduct 1.5(a) and (b), 1.7(a), 1.8(a), and 1.15(a) and (f). We suspend Chinquist from the practice of law for six months and one day and order that he pay the costs and expenses of the disciplinary proceeding.

I
[¶ 2] Chinquist was admitted to practice as an attorney in North Dakota on July 19, 1972. In 1996, Chinquist, who has a law office in Fargo, began representing a woman in connection with legal matters relating to custody of her minor child. The child had been placed in the custody of the father after the woman was incarcerated on criminal charges, and Chinquist had represented her in the past as court appointed counsel in criminal matters. He had also represented the woman's mother in her divorce case.
[¶ 3] Chinquist did not have a written fee agreement with the woman and did not send her statements of attorney fees and costs incurred during the course of the representation. The woman paid Chinquist between $13,500 and $15,000 in the form of money orders and cash delivered to Chinquist's home and office in a manila envelope, a Cracker Jack box, and an Altoids tin. The woman also gave Chinquist $5,000 to be applied to the account of another of Chinquist's clients in an unrelated criminal matter. Chinquist did not *471 provide the woman with billing statements for any of the money she gave him during the course of the representation and did not place the funds in a trust account. Although Chinquist accounted for some amounts paid by the woman early in the representation, he quit documenting his time spent on her case and he shredded the existing records after he was suspended from the practice of law for 90 days in 2004. See In re Reciprocal Discipline of Chinquist, 2004 ND 87, 679 N.W.2d 257.
[¶ 4] During the course of the representation, Chinquist reviewed the woman's medical, psychological, and psychiatric records which indicated that she had an emotional disorder. The woman told Chinquist she was classified as disabled by the Social Security Administration for emotional problems and that she also had drug and alcohol problems. Beginning in the spring or early summer of 2000, while still representing her in the custody proceedings, Chinquist engaged in a sexual relationship with the woman. According to the woman, their sexual relationship lasted until early 2003, several months before custody of her son was restored to her. At some point before the woman received custody of her son, Chinquist told her he could no longer assist her with custody matters and she retained a new attorney.
[¶ 5] In April 2005, disciplinary counsel petitioned for discipline against Chinquist. The petition alleged Chinquist had violated N.D.R. Prof. Conduct 1.5(a) and (b) relating to fees, N.D.R. Prof. Conduct 1.7(a) and (c) and 1.8(a) and (f) relating to conflict of interest, N.D.R. Prof. Conduct 1.15(a), (b) and (f) relating to safekeeping property, N.D.R. Prof. Conduct 1.16(e) relating to declining or terminating representation, and N.D.R. Prof. Conduct 8.4(d) relating to misconduct.
[¶ 6] Following a hearing, the hearing panel concluded Chinquist had violated N.D.R. Prof. Conduct 1.5(a) and (b) "by accepting large, suspicious cash payments" from the woman "that were excessive and bore no apparent relationship to the work being performed," and "by not communicating to his client before or within a reasonable time after commencing representation the rate or amount of the fees to be charged." The panel concluded Chinquist had violated N.D.R. Prof. Conduct 1.15(a) and (f) by accepting the large cash payments from the woman "without providing accounting or billing statements and without determining what portion of the funds received were for fees not yet earned," and by failing to maintain records of the cash payments and to deposit the payments into a trust account. The panel also concluded Chinquist violated N.D.R. Prof. Conduct 1.8(a) by accepting money from the woman to represent another person without advising her to seek independent counsel before consenting to the transaction. However, the panel further found that, although the sexual relationship between Chinquist and the woman "was not appropriate, the relationship did not arise to a conflict of interest since it did not affect Chinquist's ability to consider, recommend, or carry out a course of action on behalf of his client nor did it have the potential of adversely affecting Chinquist's responsibility with respect to his representation" of the woman. The panel further found that the woman's "motives in becoming involved in this sexual relationship are unclear in light of a sexual relationship that she engaged in with another professional and a disciplinary complaint filed against that professional." The panel recommended that Chinquist be suspended from the practice of law for 30 days and that he pay $5,289.45 for the costs and expenses of the disciplinary proceeding.

II
[¶ 7] We review disciplinary proceedings de novo on the record. Disciplinary *472 Bd. v. Giese, 2006 ND 13, ¶ 7, 709 N.W.2d 717. We accord due weight to the findings, conclusions, and recommendations of the hearing panel, but we do not act as a mere rubber stamp. Disciplinary Bd. v. Ward, 2005 ND 144, ¶ 6, 701 N.W.2d 873. Disciplinary counsel bears the burden of proving each alleged violation of the disciplinary rules by clear and convincing evidence. Disciplinary Bd. v. Edin, 2005 ND 109, ¶ 9, 697 N.W.2d 727. Each disciplinary case must be considered upon its own facts to decide what discipline, if any, is warranted. Disciplinary Bd. v. McKechnie, 2003 ND 170, ¶ 7, 670 N.W.2d 864.

A
[¶ 8] The hearing panel found Chinquist violated N.D.R. Prof. Conduct 1.15(a) and (f), which provide:
(a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be deposited in one or more identifiable interest bearing trust accounts in accordance with the provisions of paragraph (d). Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer in the manner prescribed in paragraph (f).
. . . .
(f) A lawyer shall maintain or cause to be maintained on a current basis records sufficient to demonstrate compliance with the provisions of this rule. Such records shall be preserved for at least six years after termination of the representation.
[¶ 9] The record reflects Chinquist accepted large cash payments from the woman without providing accounting or billing statements and without determining what portion of the funds received were for fees not yet earned. Chinquist also failed to maintain records of the cash payments from the woman and did not deposit the payments into a trust account. We conclude there is clear and convincing evidence that Chinquist violated N.D.R. Prof. Conduct 1.15(a) and (f).

B
[¶ 10] Chinquist argues the hearing panel erred in determining that he violated N.D.R. Prof. Conduct 1.5(a) and (b), which provide:
(a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) The fee customarily charged in the locality for similar legal services;
(4) The amount involved and the results obtained;
(5) The time limitations imposed by the client or by the circumstances;
(6) The nature and length of the professional relationship with the client;
(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and
(8) Whether the fee is fixed or contingent.
(b) When the lawyer has not regularly represented the client, the basis, rate, or amount of the fee shall be communicated to the client before or within a reasonable *473 time after commencing the representation.
[¶ 11] There was no written fee agreement, fee statements, or correspondence detailing the terms of Chinquist's representation of the woman. Chinquist accepted large sums of cash from the woman but did not give her receipts, account for the funds, or refund any amounts that were unearned. After Chinquist's law license was suspended in 2004, he shredded his records making it impossible to determine how much money Chinquist received from the woman for legal services and the reasonableness of the fee.
[¶ 12] Chinquist claims the funds the woman paid to him were for work he had completed on her custody case, and he attempted to reconstruct a record of the time he spent on the case. Chinquist also claimed that he informed the woman of the rate or amount of fees to be charged. This evidence, however, conflicts with the woman's testimony that she loaned him amounts of money because of his office cash flow needs. We conclude there is clear and convincing evidence that Chinquist violated N.D.R. Prof. Conduct 1.5(a) and (b).

C
[¶ 13] Chinquist argues the hearing panel erred in finding that he violated N.D.R. Prof. Conduct 1.8(a), which provides:
(a) Except for standard commercial transactions involving products or services that the client generally markets to others, a lawyer shall not enter into a business, financial or property transaction with a client unless:
(1) The transaction is fair and reasonable to the client; and
(2) After consultation, including advice to seek independent counsel, the client consents to the transaction.
[¶ 14] While representing the woman on custody matters, Chinquist attempted to have her participate in a demonstration in connection with a murder case in which he was representing the defendant. She became friends with the defendant's family, and the woman eventually paid Chinquist $5,000 toward the defendant's legal bills. Chinquist told the defendant that he had "written off" this part of the bill rather than telling him the woman had paid the bill. Disciplinary counsel argues that Chinquist capitalized on the woman's sympathy for the defendant's family by having her pay his legal fees without advising her to seek independent counsel's advice concerning this financial transaction before she consented to the transaction. Although Chinquist argues he was no longer representing the woman when this transaction occurred, he admits that he continued to represent her "to iron out details" of summer visitation after the payment was made. We conclude there is clear and convincing evidence Chinquist violated N.D.R. Prof. Conduct 1.8(a).

D
[¶ 15] Disciplinary counsel argues the hearing panel should have found that Chinquist, who had a sexual relationship with the woman during the representation, violated N.D.R.Prof. Conduct 1.7(a), which provides:
(a) A lawyer shall not represent a client if the lawyer's ability to consider, recommend, or carry out a course of action on behalf of the client will be adversely affected by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests.
[¶ 16] We agree with the hearing panel's finding that the "sexual relationship between Chinquist and [the woman]" occurred "during a time when Chinquist was *474 providing legal representation" for her. Chinquist admitted that he continued working on visitation and child support matters for the woman for a period of time after their sexual relationship. The panel, however, found "the relationship did not arise to a conflict of interest since it did not affect Chinquist's ability to consider, recommend, or carry out a course of action on behalf of his client nor did it have the potential of adversely affecting Chinquist's responsibility with respect to his representation of" the woman.
[¶ 17] The North Dakota Rules of Professional Conduct do not expressly prohibit sexual relationships between a lawyer and a client.[1] Although this Court has not decided whether the Rules of Professional Conduct nevertheless prohibit sexual relationships between lawyer and client, the subject has received considerable judicial attention in the context of attorney disciplinary actions and, as stated in ABA/BNA Lawyer's Manual on Prof. Conduct 51:416, at p. 262 (2006), "[t]he idea that sex between consenting adults is a private matter has lost much of its force when it comes to lawyer-client sexual relations." Courts have imposed discipline upon lawyers for having sexual relationships with clients for many years. See, e.g., Gregory G. Sarno, Annotation, Sexual Misconduct as Ground for Disciplining Attorney or Judge, 43 A.L.R.4th 1062 (1986), and cases collected therein. This prohibition has been applied with particular force to a lawyer's sexual relationship with a domestic relations client because of the great potential of prejudice to the client's interests. See, e.g., People v. Zeilinger, 814 P.2d 808, 810 (Colo.1991) (a sexual relationship with a client undergoing a divorce may inflict harm on the client in a contested custody case where the attorney may become the focus of the proceeding and be called as a witness); Matter of Lewis, 262 Ga. 37, 415 S.E.2d 173, 175 (1992) ("Every lawyer must know that an extramarital relationship can jeopardize every aspect of a client's matrimonial case"); In re Tsoutsouris, 748 N.E.2d 856, 860 (Ind.2001) (lawyer's ability to represent client effectively may be impaired); Committee on Prof'l Ethics and Conduct v. Hill, 436 N.W.2d 57, 59 (Iowa 1989) ("attorney must be aware that the actions of the client and attorney may affect negotiations in the dissolution case, including determination of custody and visitation of minor children"); Matter of Berg, 264 Kan. 254, 955 P.2d 1240, 1247 (1998) ("there is a significant danger in a divorce situation that the attorney may become a witness in the proceedings and also inflict great harm to the client when division of property or custody of children is contested"); Bourdon's Case, 132 N.H. 365, 565 A.2d 1052, 1057 (1989) (intimate relationship between lawyer and client can prejudice chances of being awarded custody of children); Matter of DiPippo, 678 A.2d 454, 456 (R.I.1996) ("Any competent attorney practicing in the area of domestic-relations law must be aware that the sexual conduct of a divorce client may have significant bearing on that client's ability to secure child custody").
[¶ 18] Although courts have justified discipline under various rules of professional conduct, there is substantial authority to support the imposition of discipline for sexual relations with a client in a domestic relations case under rules that are substantially similar to N.D.R. Prof. Conduct *475 1.7(a). See, e.g., Zeilinger, 814 P.2d at 809; Lewis, 415 S.E.2d at 175; Tsoutsouris, 748 N.E.2d at 857; Berg, 955 P.2d at 1242; DiPippo, 678 A.2d at 455. Courts have routinely rejected arguments that the lack of a rule specifically forbidding sexual relations with a client excuses this type of conduct. See In re Rinella, 175 Ill.2d 504, 222 Ill.Dec. 375, 677 N.E.2d 909, 914 (1997); Tsoutsouris, 748 N.E.2d at 858; Berg, 955 P.2d at 1247, 1251; DiPippo, 678 A.2d at 455. Furthermore, courts have also rejected the argument that sexual relationships should be authorized unless there is evidence of impaired representation, because having consensual sexual relations with domestic relations clients serves the attorney's own interests and thereby threatens the representation. Tsoutsouris, 748 N.E.2d at 858, 860; Berg, 955 P.2d at 1251; Druckers' Case, 133 N.H. 326, 577 A.2d 1198, 1203 (1990). "The lawyer's own interest in maintaining the sexual relationship creates an inherent conflict with the proper representation of the client." DiPippo, 678 A.2d at 456.
[¶ 19] The record establishes that Chinquist had a consensual sexual relationship with a client he was representing in a domestic relations case during the period of the representation. Chinquist is an experienced lawyer who had to have known that the sexual relationship jeopardized the disposition of his client's custody case. The absence of a bright-line rule prohibiting sexual relationships with clients, and the lack of evidence of impaired representation, provide no excuse. The client's "motives" for becoming involved in the sexual relationship with Chinquist are irrelevant. By engaging in a sexual relationship with his client during the course of the representation, Chinquist placed his own interests above those of his client. We conclude there is clear and convincing evidence that Chinquist violated N.D.R. Prof. Conduct 1.7(a).

III
[¶ 20] Disciplinary counsel argues a two-year suspension would be a more appropriate sanction than the 30-day suspension recommended by the hearing panel. Chinquist argues that we should consider a public reprimand and order that he not pay the entire costs and expenses of the disciplinary proceeding because a "large part of [the] expense was unnecessary."
[¶ 21] In determining the appropriate sanctions for violations of the Rules of Professional Conduct, we are guided by the North Dakota Standards for Imposing Lawyer Sanctions. Disciplinary Bd. v. Edwardson, 2002 ND 106, ¶ 21, 647 N.W.2d 126. Under N.D. Stds. Imposing Lawyer Sanctions 2.0, potential sanctions include disbarment, suspension, reprimand, and assessment of costs. Disciplinary Bd. v. McKechnie, 2003 ND 170, ¶ 23, 670 N.W.2d 864. In determining the proper sanction, N.D. Stds. Imposing Lawyer Sanctions 3.0 directs that we consider "(a) the duty violated; (b) the lawyer's mental state; (c) the potential or actual injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors."
[¶ 22] Under N.D. Stds. Imposing Lawyer Sanctions 4.12, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." Under N.D. Stds. Imposing Lawyer Sanctions 4.32, "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client." Chinquist did not communicate to his client the rate to be charged for the *476 representation, accepted excessive cash payments that bore no relationship to the legal work performed, provided no billing statements to the client, and failed to maintain records and to deposit the payments in a trust account. Chinquist also entered into unrelated financial transactions with the client without advising her to seek independent advice. Chinquist engaged in a sexual relationship with the woman and failed to appreciate the danger to his client's interests in her domestic relations case. Chinquist's mishandling of client funds, coupled with his conflict of interest occasioned by the sexual relationship, warrants a suspension from the practice of law.
[¶ 23] Aggravating factors we may consider under N.D. Stds. Imposing Lawyer Sanctions 9.22 include "(a) prior disciplinary offenses; (b) dishonest or selfish motive;. . . (d) multiple offenses; . . . (h) vulnerability of victim; . . . [and] (i) substantial experience in the practice of law." Chinquist was suspended from the practice of law for a 90-day period in 2004 for failure to pay income taxes for 10 years. He has also had one private reprimand in the past. Chinquist displayed a selfish motive in his financial dealings with the client and in his sexual relationship with her. We have found that Chinquist violated several provisions of the Rules of Professional Conduct. Chinquist knew his client had emotional problems and was vulnerable. Chinquist has been practicing law for more than 30 years. As mitigating circumstances under N.D. Stds. Imposing Lawyer Sanctions 9.32(e) and (l), we consider that Chinquist provided full and free disclosure to the disciplinary board, displayed a cooperative attitude toward the proceedings, and showed remorse.
[¶ 24] Under these circumstances, we order that Chinquist be suspended from the practice of law for six (6) months and one (1) day beginning July 1, 2006, and that he pay the full costs and expenses of the disciplinary proceeding in the amount of $5,289.45 under N.D.R. Lawyer Discipl. 1.3(D). Chinquist must comply with the notice of status provisions of N.D.R. Lawyer Discipl. 6.3, and upon expiration of the suspension period, must comply with the reinstatement provisions of N.D.R. Lawyer Discipl. 4.5.
[¶ 25] GERALD W. VANDE WALLE, C.J., ZANE ANDERSON, D.J. DANIEL J. CROTHERS, DALE V. SANDSTROM, CAROL RONNING KAPSNER, JJ., concur.
[¶ 26] The Honorable ZANE ANDERSON, D.J., sitting in place of MARING, J., disqualified.
NOTES
[1] This Court recently adopted amendments to the North Dakota Rules of Professional Conduct. See Order of Adoption, No. 20050353 (May 3, 2006). Effective August 1, 2006, N.D.R. Prof. Conduct 1.8(j) provides: "A lawyer shall not have sexual relations with a client unless a consensual sexual relationship existed between them when the client-lawyer relationship commenced."